Evangeline COLEMAN, et al.

v.

Helen O'BANNON, et al.

Civ. A. No. 81-5003.

United States District Court, E.D. Pennsylvania.

Feb. 11, 1982.

Deborah Harris, Philadelphia, Pa., for plaintiffs.

Stanley Slipakoff, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

### WEINER, District Judge.

This action was brought by the plaintiffs seeking a permanent injunction prohibiting the Secretary of Pennsylvania's Department of Public Welfare ("DPW") from denying supplemental benefits under the Aid to Families with Dependent Children ("AFDC") program to applicants and recipients whose gross incomes exceed 150% of Pennsylvania's payment level, but do not exceed 150% of Pennsylvania's actual standard of need.

The parties stipulated to the following facts. Plaintiff Evangeline Coleman ("Coleman") resides in Philadelphia with her three small minor children. Coleman's gross monthly income from her employment is $662.20, from which she nets $525.00 per month after taxes. From that sum, Coleman pays a babysitter $215.00 per month and $30.00 per month for carfare to and from work, leaving her a net of $270.00 per month. Coleman has been receiving a supplemental public assistance benefit from DPW under the AFDC program for herself and her three children. In Philadelphia, the AFDC payment level for a family of four is $381.00 per month, whereas under the Woodbury[1] Standard updated through June 1981, it is $652.04 per month. Coleman's gross monthly income from employment exceeds $572.00 which is 150% of the payment level for a family of four in Philadelphia, but does not exceed $978.05 which is 150% of the updated Woodbury Standard. DPW has notified Coleman that her supplemental AFDC payments will be discontinued because her gross income exceeds 150% of Pennsylvania's standard of need.

The plaintiffs argue that Pennsylvania's active "standard of need" is the Woodbury Standard as updated by DPW. The defendants on the other hand argue that Pennsylvania's state plan is a formal contract between DPW and the federal Department of Health and Human Services (HHS), and that the Woodbury Standard has never been adopted as part of Pennsylvania's state plan nor has the state plan ever referred to the Woodbury Standard. Thus, the issue before this court is to determine Pennsylvania's standard of need as that term is used in the Omnibus Budget Reconciliation Act of 1981, (O.B.R.A.), Pub.L. 97–35, Sec. 2303 (August 13, 1981). That act, which amends section 402(a) of the Social Security Act, 42 U.S.C. 602(a), provides that a state plan for aid and services to needy families must:

> "(18) provide that no family shall be eligible for aid under the plan for any month, if, for that month, the total income of the family (other than payments under the plan), without application of paragraph (8), exceeds 150 percent of the *State's standard of need* for a family of the same composition." (emphasis added)

The defendants would have this court treat its plan as approved by HHS, as a contract, and then apply contract law in interpreting the plan. This argument ignores the fact that a state may not promulgate a plan contrary to federal require-

1. The Woodbury Standard was developed by a committee chaired by Dr. Mildred Fairchild Woodbury, which was appointed in 1955 by the Secretary of Pennsylvania, Department of Public Assistance (later merged with DPW) to de-termine the amount a Pennsylvania family needs to maintain a minimum standard of health and decency. See: *Gurley v. Wohlgemuth,* 421 F.Supp. 1337, 1342 n. 13a (1976).

ments. *Rosado v. Wyman,* 397 U.S. 397, 420–421, 90 S.Ct. 1207, 1221–1222, 25 L.Ed.2d 442 (1970). They claim they have not done so because HHS has adopted its State Plan.

■ Defendants concede that DPW has never explicitly stated that its standard of need and payment level are one and the same. [Defendants' Memorandum in Opposition to Plaintiffs' Request for a Permanent Injunction, 6.] Nevertheless, they maintain that officials of HHS, who administer the AFDC program, are of the opinion that the standard of need in Pennsylvania and the payment level are equal. Yet, at a preliminary hearing held on January 6, 1981, one such official, Robert Clifford, testified only that states may establish a standard of need which differs from their level of payment except that states will violate Section 602(a)(23) of the Social Security Act, 42 U.S.C.A. § 602(a)(23) if the established standard of need, at any time, falls below the level of need set as of July 1, 1969.[2] At no point did Clifford testify that Pennsylvania's standard of need and level of payment are the same.

Two DPW officials testified at the hearing to the effect that the Woodbury Standard has never been incorporated into Pennsylvania's AFDC program. However, neither official offered any documentation to support this assertion.

In addition, defendants state that "[t]o determine what [Pennsylvania's] standard of need is requires simply looking at the plan." [Defendants' Memorandum in Opposition, 10]. However, defendants neither quote nor cite the pertinent provisions of the State Plan. On perusing Pennsylvania's Public Assistance Manual, 55 Pa.Code, § 101.1 *et seq.,* we presume that defendants are relying on Sections 171.21 and 175.21. Sections 171.21(a)(1) and (a)(2) relate to

need and amount of assistance under the AFDC program and read as follows:

"(a) *Standard of need.* Individual standard of need determinations will be made in accordance with the following:

(1) A person, or group applying together for assistance, is in need if income and other available resources as defined in this subpart are less than the family size allowances as established by regulation. The difference will be the amount of the assistance grant.

(2) The objective of this chapter is that the person or group shall have the amount of assistance needed for living requirements by assistance standards."

Section 175.21(a) sets forth the following policy with respect to AFDC allowances and benefits:

"[T]he allowances of the Department will recognize certain amounts by family size that persons require to meet basic living requirements. The family size allowances will take into account costs for food, clothing, incidentals, shelter and utilities. These family size allowances will be used in computing the grant."

Read together, these provisions could conceivably be construed as establishing the level of payment to meet the standard of need. However, we decline to so construe them in light of the numerous explicit references in DPW's own documents to the Woodbury Standard as Pennsylvania's standard of need.

For example, in the Fiscal Year 1981–82 DPW Budget Request, the report states in reference to the Commonwealth's cash grant level, that "[b]ased on the June, 1980 consumer price index, assistance grants were then 63% of the Woodbury Standard, a standard devised over 20 years ago. If enacted, the Administration's Welfare Re-

---

**2.** 42 U.S.C.A. § 602(a)(23) requires that:

"[a] State plan for aid and services to needy families with children must ... provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that

the State imposes on the amount of aid paid to families will have been proportionately adjusted."

We note that, in order to comply with the above provision, DPW raised its level of payment on January 1, 1970, to meet the Woodbury Standard of need. [Defendants' Opposition Memorandum, 5].

form Plan will eliminate the Woodbury Standard...." [Plaintiff's Exhibit 29].

Moreover, a 1977 DPW publication titled "Poverty in Pennsylvania: the Challenge" devotes an entire chapter to the Woodbury Standard. In this chapter, the Woodbury Standard is described as the cost of a market basket of those items necessary for minimal maintenance by public assistance families. This description is followed by the statement that "[t]he Department of Public Welfare has based cash assistance grants on this 'Woodbury Standard' since 1957." [Plaintiff's Exhibit 2, p. 26].

In addition, the Pennsylvania Governor's Executive budget, for every fiscal year since 1974, has referred to the Woodbury Standard as "the Commonwealth's defined minimally acceptable standard of living." [Plaintiff's Exhibits 1, 22–28].

While it is far from clear how the current payment level was devised from the Woodbury Standard, Woodbury nevertheless appears to be the standard of need from which the Commonwealth measures its payments. *See, Gurley v. Wohlgemuth,* 421 F.Supp. 1337, F/N 13a (1976).

The United States Supreme Court has defined "standard of need" as the amount deemed necessary to provide for essential needs, such as food, clothing, and shelter. *Quern v. Mandley,* 436 U.S. 725, 737, 98 S.Ct. 2068, 2075, 56 L.Ed.2d 658 (1978). The Woodbury Standard being the only computation presented to this court which reflects the items of essential needs, this court can only conclude that the Woodbury Standard is the standard of need for Pennsylvania.

Moreover, this court is unable to determine why DPW semi-annually updates the Woodbury Standard, by applying the Department of Labor's Consumer Price Index to the five major components of the standard, i.e., food, clothing, incidentals, shelter, and utility, if that standard is not the standard of need. Defendants claim that while the Woodbury Standard is used, "other factors [have] been used...against which the adequacy of DPW's standard of need/payment could be judged...." [Defendants' Memo, 5]. What these other fac-

tors are, defendants do not inform this court.

DPW's argument that the Woodbury Standard serves merely as a benchmark by which Pennsylvania's official standard of need is evaluated is strained to say the least. DPW's most recent data show that current payment levels represent only fifty-eight percent of the Woodbury Standard calculated as of June, 1981. [Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction, 7; Plaintiffs' Exhibit 30]. In fact, Pennsylvania's level of payment has fallen below the Woodbury Standard during each year since 1970. [Defendants' Opposition Memorandum, 5].

We think it highly unlikely that the discrepancy between the level of payment and Woodbury Standard is explained by the theory that the former more accurately reflects the true standard of need. Instead, the more reasonable explanation is, simply that budgetary constraints have prevented Pennsylvania from establishing a payment level which meets the standard of need.

Our view finds support in DPW's Budget Request for Fiscal Year 1981–1982 which states that the Administration's proposed Welfare Reform Plan will replace the Woodbury Standard with the Lower Budget Standard ("LBS") recently developed by the Department of Labor. As the Woodbury Standard was devised over twenty years ago, the newer LBS is thought to "more accurately reflect[s] the level of assistance needed for a decent standard of living." [Plaintiffs' Exhibit 29, p. 40]. Significantly, the figures represented by the LBS are higher than those reflected by the Woodbury Standard. In view of the fact that Pennsylvania's level of payment is considerably lower than both the Woodbury Standard and the LBS, we are unable to accept defendants' contention that the payment level also represents Pennsylvania's official standard of need.

Accordingly, we grant plaintiffs' motion and permanently enjoin defendants from denying supplemental benefits under the

AFDC program to otherwise eligible applicants and recipients whose gross incomes exceed 150% of Pennsylvania's payment level but do not exceed 150% of the Woodbury Standard.