Nancy BETSON, Annabelle Woodard and Cynthia Williams on behalf of themselves and all others similarly situated

v.

Walter COHEN, Secretary of the Pennsylvania Department of Public Welfare; and Don Jose Stovall, Executive Director of the Philadelphia County Board of Assistance; and Margaret M. Heckler, Secretary of the United States Department of Health and Human Services.

Civ. A. No. 83–3543.

United States District Court,
E.D. Louisiana.

Dec. 29, 1983.

Deborah Harris, Community Legal Services, Philadelphia, Pa., for plaintiff.

John D.J. Shellenberger, Philadelphia, Pa., for State defendants.

Charlotte Hardnett, Philadelphia, Pa., for federal defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was initially brought in July 1983 by Roseann Barnes on behalf of herself and a putative class challenging federal regulations and state implementation of a section added to the Social Security Act in 1981 regarding the treatment of lump sum income received by Aid to Families with Dependent Children (AFDC) assistance units. Her complaint was dismissed with prejudice as to her and without prejudice as to the putative class, by agreement of the parties. Thereafter, Nancy Betson, Annabelle Woodard, Cynthia Williams and a woman filing anonymously as Juana del

Pueblo filed a motion to intervene and reinstate the complaint together with an intervenor's complaint, a second amended complaint and a motion for a temporary restraining order and/or preliminary injunction.[1] They have also filed a motion for class certification.

State defendants Walter Cohen, Secretary of the Pennsylvania Department of Public Welfare ("DPW") and Don Jose Stovall, Executive Director of the Philadelphia County Board of Assistance together with federal defendant Margaret M. Heckler, Secretary of the United States Department of Health and Human Services ("HHS") have entered into a stipulation, which the court has approved, to permit the intervention of Betson, Woodard and Williams and allow the amended complaint be filed of record. Both the state and federal defendants oppose the intervention of Juana del Pueblo and the certification of a class. Because of the disposition of the other intervening plaintiffs' motion, the court will deny intervention by Juana del Pueblo.

Plaintiff Betson began receiving AFDC benefits in 1977. She has two children, ages four and six. She receives monthly child support of $60.00[2] for her oldest child. Until her AFDC grant of $335.00 per month ceased, she paid $63.00 per month for rent in public housing, which was reduced to $6.00 per month once her grant ceased. Her utility bills occasionally reach $125.00 per month. She has a student loan, which is spent toward her schooling.

In April 1982 plaintiff Betson was involved in an automobile accident resulting in injuries to her leg and jaw. In December 1982, in settlement of her claim for pain and suffering, she received $18,175.00.[3] No longer than two weeks after

---

1. In accordance with Rule 65(a)(2) of the Federal Rules of Civil Procedure, and by agreement of the parties, the court has consolidated the trial of the action on the merits with the hearing on the application for a preliminary injunction. That hearing was held on December 14, 1983.

2. Although her complaint asserts that she receives $80.00 per month in child support, she

testified before the court that she receives $60.00 per month. The court will accept the latter figure.

3. The settlement totalled $26,000.00 of which her attorney retained $7825.00. The figures are somewhat at odds with her testimony but the difference is insignificant for these purposes.

receipt of that money, DPW mailed a notice to her advising her that, in accordance with the lump sum rule, her and her children's AFDC grant would be terminated until July 1985. By June 1983 plaintiff Betson had exhausted the $18,175.00. She reapplied for AFDC and was told she would not be eligible for assistance until twenty-nine months had expired, in accordance with the lump sum rule. Her appeal resulted in a finding that she had exhausted her lump sum amount but that she remained ineligible for an AFDC grant due to the lump sum rule. She receives food stamps and medical assistance and, by agreement of the parties pending the outcome of this case, has been receiving an AFDC grant. Otherwise, she has no source of income.

Plaintiff Woodard has been receiving an AFDC grant for herself and her son since 1974. In March 1983, as a result of injuries she sustained in an automobile accident, Woodard received $6600.00 of a $10,-000.00 settlement for pain and suffering. She reported the settlement to DPW and was advised that she owed the department $1700.00 for assistance received while her accident claim was pending and would then be ineligible for an AFDC grant for fifteen months [4] based on the lump sum rule.

Plaintiff Woodard has been receiving food stamps and medical assistance since July 1983. She has been receiving AFDC assistance pending a request for reconsideration of Cohen's decision. If her benefits are terminated she will have no other source of income.

Plaintiff Williams has three children. She was a recipient of AFDC benefits until October 1983 and has had no earned income since the summer of 1982. At the time her grant ceased she was receiving $401.00 per month in AFDC assistance. In early August 1983 she received retirement benefits, for which she was required to apply as a condition of receiving AFDC benefits and for which she signed a confession of judgment in favor of DPW, total-

ling $4780.98. The $4780.98 was exhausted by the end of August. Her AFDC grant was terminated in September 1983 and by notice dated October 26, 1983 DPW advised her that she was ineligible for assistance for a period of time based on the lump sum rule. Her income consists of $39.03 per month in retirement benefits and $107.00 per month in child support which is restricted to the use of her six-year old child.

As stated earlier, the plaintiffs challenge the validity of federal and state regulations implementing 42 U.S.C. § 602(a)(17) which was enacted as Section 2304 of the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 357, 845 (1981) ("OBRA"). This new section changed the treatment of lump sum payments received by AFDC applicants or recipients. Prior to the enactment, if an assistance unit received a nonrecurring lump sum of money, it was counted as income in the month of receipt. If the funds were expended and other eligibility conditions were met, the assistance unit would be eligible for AFDC in the next month.

The new section provides:

§ 602. State plans for aid and services to needy families with children; contents; approval by Secretary (a) A State plan for aid and services to needy families with children must

.       .       .       .       .

(17) provide that if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other

---

**4.** In her complaint Woodard asserts that DPW advised her that she would be ineligible for 15 months. She testified that it was for 11 months.

The court, viewing the situation on a "worst case" basis, will assume her ineligibility is for 15 months.

income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A); . . . .

42 U.S.C. § 602(a)(17).

The section incorporated in section 602(a)(17) states:

(a) A State plan for aid and services to needy families with children must

(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month); . . . .

42 U.S.C. § 602(a)(8)(A)(i) and (ii). It is the incorporation and interpretation of this section that is initially at issue.

The federal and state regulations apply § 602(a)(17) when any recipient of AFDC receives a lump sum. The state regulations have been applied to personal injury awards. It is the plaintiffs' argument that the Social Security Act limits the application of the lump sum disqualification rule to AFDC recipients who have earned income. They also argue that compensation for pain and suffering is not "income" and therefore not subject to the rule. Finally, it is plaintiffs' argument that DPW's practice is violative of its regulations which they argue limits income subject to the lump sum disqualification to "windfalls" or "accumulated or retroactive benefits."

The federal regulation setting out the lump sum rule provides:

When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1982). It is plaintiffs' argument that this regulation is inconsistent with the authorizing statute because the Congress intended for the lump sum rule to apply only to recipients with earned income.

■ The Social Security Act section is ambiguous. Both the plaintiffs' reading that, by referring to sections 602(a)(8)(i) and (ii), Congress intended to mean only those persons having earned income, and defendants' interpretation that, by that reference, Congress intended to refer only to the *type* of person applying for or receiving AFDC, i.e. all AFDC recipients, is supportable. In the face of an ambiguous statute, the court must turn to the legislative history. *Tidewater Oil Co. v. United States*, 409 U.S. 151, 157, 93 S.Ct. 408, 412–413, 34 L.Ed.2d 375 (1972).

■ The AFDC program is a joint federal-state program which has as its purpose the enabling of states to furnish financial assistance to families with dependent children. Its stated purpose is "to help . . .

parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection ...." 42 U.S.C. § 601. States participating in the program must submit to HHS, the administering federal agency, a plan consistent with federal law.

When then Secretary of HHS, Richard S. Schweiker, proposed the amendment to the Social Security Act, he stated that the purpose was "to ensure that people assume more personal responsibility for planning the use of income to meet their needs." (Hearings before the Committee on Finance, U.S. Senate, 97th Cong., 1st Sess., March 17, 1981, p. 33.) The Secretary explained that the rule would come into effect "[w]hen a large amount of money is received as a lump sum (for example, an inheritance) ...." *Id.* The testimony of former Secretary Schweiker fails to mention any intention of limiting application of the rule solely to applicants with earned income. The Budget Committee Report describes the purpose of the measure to be to eliminate the incentive to spend lump sums quickly in order to retain AFDC eligibility. [1981] U.S.Code Cong. (Admin.News at 771.) In neither the Senate Budget Committee Report nor the House Conference Report is the receipt of earned income discussed as a prerequisite to the application of the new lump sum rule. *Id.* at 702, 1341.

Significantly, then, there is no support in the legislative history for the plaintiffs' reading of the statute.

In its interim rules published in the Federal Register, HHS explained section 402(a)(17) as follows:

> Prior to enactment of the new provision, any payments to an assistance unit that met the definition of income (e.g., retroactive Social Security benefits) were counted as income in the month of receipt, and considered a resource to the extent retained, in the following months. The new section 402(a)(17) of the Act requires *all income* to be considered available to meet the present and future needs of AFDC recipients. *It is the responsibility of the caretaker relative to budget accordingly.* To do this, States must first determine whether the family's total amount of earned and unearned income ... exceeds the State's need standard in the month of receipt of the income.
>
> .     .     .     .     .
>
> For purposes of this provision, the new regulations do not alter the definition of income now employed by States.

.     .     .     .     .

46 Fed.Reg. 46755 (1981) (emphasis supplied).

The rules were promulgated by the agency charged with administering the program contemporaneously with enactment of the amendment. They were not to be made final for sixty days in order to give all interested parties time to comment. *Id.* at 46750.

In response to comments regarding the proposed rule, HHS made some revisions and clarifications. It agreed that the provision should be "construed to encourage recipients to budget *nonrecurring lump sum income.*" 47 Fed.Reg. 5656 (1982) (emphasis supplied). The agency also reiterated the fact that the "Omnibus Budget Reconciliation Act of 1981 did not change how States treat income." *Id.* at 5656. States would continue to be permitted to "exclude income which the recipient receives as settlement for back medical bills, compensation for loss of resources, etc., so long as the money is used for that purpose." *Id.* The final rule at issue was codified in 45 C.F.R. Part 233.

These regulations must be read in light of the following rule of law:

> When presented with a problem of statutory construction, we must give deference to the interpretation given the statute by the officers or agency charged with its administration, unless the interpretative regulation can be said not to be a reasoned and supportable interpretation of the statute.

*Levine v. Farleigh Dickinson Univ.*, 646 F.2d 825, 831 (3d Cir.1981) (citing *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980)). *See also Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In light of the language and legislative history of the lump sum rule, this court cannot say that the Secretary's regulation applying the lump sum rule to earned and unearned income is unreasonable.

The legislative history clearly reveals an effort to give AFDC assistance units an incentive to budget the lump sum payment. This incentive exists whether or not there is earned income. The equation used to determine the period of eligibility accounts for earned and unearned income. The burden on recipients with no earned income, were they to budget according to the method of calculating ineligibility, is no different than the burden on recipients with earned income.

■ That finding, however, does not end the matter. As stated earlier, plaintiffs also contend that the treatment of personal injury awards for pain and suffering as income violates federal law and Pennsylvania's own regulations. The term "income" is not defined in the AFDC statute or regulations. The statute generally provides that "in determining need, [the State shall] take into consideration any ... income and resources" of an AFDC applicant except as otherwise disregarded. 42 U.S.C. § 602(a)(7). The regulations promulgated under the statute expressly provide for the exclusion or the disregard of certain items. *See* 45 C.F.R. § 233.20(a)(3). Personal injury awards are not among the excluded items. Furthermore, as noted, the agency responded to comments regarding the treatment of income when it is received as a settlement for specific bills by reiterating that such payments are not included as income. There is no indication of like treatment for personal injury damage awards.

The plaintiffs argue that their position is supported by the exclusion of personal injury awards as income under the Internal Revenue Code. That exclusion, however, is expressly established by statute at 26 U.S.C. § 104(a)(2). Were such a provision not made, such awards could be considered income under the Internal Revenue Code general provision of income, 26 U.S.C. § 61(a). *See Roemer v. Commissioner of Internal Revenue,* 716 F.2d 693, 696 n. 2 (9th Cir.1983) ("Since there is no tax basis in a person's health and other personal interests, money received as compensation for an injury to those interests might be considered a realized accession to wealth" absent the exclusion.) The plaintiffs' argument fails in light of these considerations.

■ Finally, plaintiffs contend that DPW misapplies the State regulations which define "lump sum income" as:

Income—Cash or income-in-kind received by the client, including but not limited to, contributions by a legally responsible relative (LRR), and the following:

. . . . .

(iv) Lump sum payments as provided in § 183.44(b) (relating to procedures).

(A) A lump sum payment is a nonrecurring cash payment. Regulations regarding lump sum payments do not apply to any items, as provided in Chapter 257 (relating to reimbursement), for which an acknowledgment of liability is signed, unless the amount to be reimbursed is less than the lump sum payment. In such cases, the excess remaining would be treated in accord with § 183.44(b)(1) (relating to procedures).

55 Pa.Code § 183.22.

The section specifically covering lump sum payments describes them as:

(i) The types of lump sum income. The types of lump sum income are as follows:

(A) Windfalls. Windfalls may include, but are not limited to, prizes, insurance benefits, gifts, inheritances and the like.

(B) Accumulated or retroactive benefits. These benefits include, but are not limited to, retroactive RSDI, Worker's Compensation, or Unemployment Compensation, and the like. Such benefits are usually subject to reimbursement re-

quirements in accordance with Chapter 257 (relating to reimbursement).

55 Pa.Code § 183.44(b)(1)(i).

The question as to whether personal injury awards for pain and suffering fall within these State regulations is not free from doubt. The court is guided by Supreme Court precedent regarding the scope of review afforded agency interpretation of its own regulations:

> Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt .... [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

The regulations clearly do not limit what items are to be included in the categories of lump sum income. A settlement for personal injury falls within the language "nonrecurring cash payment." Although the court might not describe such a payment as a "windfall" in the sense that a windfall tends to connote an unexpected gain, it cannot be said to be "inconsistent" to do so in light of the cross-reference to section 257 which includes "personal damage claims and awards" in its list for reimbursement to the agency. By deferring to the agency interpreting its own regulations, the court is constrained to find that the practice of DPW in treating personal injury awards as lump sum payments is neither "plainly erroneous [n]or inconsistent with the regulation."

Because the court has found for both the federal and state defendants and, therefore, injunctive relief is unavailable to these plaintiffs, a decision on the class certification motion, which motion is strongly opposed by the defendants, is obviated. The court notes, however, that it views this case as inappropriate for class action in that the plaintiffs have failed to demonstrate that the class is so numerous that joinder of all members is impracticable, as required by Rule 23(a)(1) of the Federal Rules of Civil Procedure.