749 F.2d 1009
 Roseann BARNES, on behalf of herself and all others
similarly situated, Nancy Betson, Annabelle
Woodard, and Cynthia Williams
v.
Walter COHEN, individually and in his capacity as Secretary
of the Pennsylvania Department of Public Welfare; Don Jose
Stovall, individually and in his capacity as Executive
Director of the Philadelphia County Board of Assistance;
and Margaret M. Heckler, individually and in her capacity as
Secretary of the United States Department of Health and
Human Services.
Appeal of Nancy BETSON, Annabelle Woodard, and Cynthia Williams.
Essie Mae HARRIS, and T.E., individually and on behalf of
all others similarly situated,
v.
Audrey HARRIS, individually and in her capacity as Acting
Director of the Division of Public Welfare, New Jersey
Department of Human Services; George J. Albanese,
individually and in his capacity as Commissioner of New
Jersey Department of Human Services; and Margaret M.
Heckler, as Secretary of the United States Department of
Health and Human Services, Appellants
 Nos. 84-1043, 84-5063 and 84-5064.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 10, 1984.
Decided Nov. 23, 1984.
 
 Deborah Harris (Argued), David A. Super, Community Legal Services, Inc., Philadelphia, Pa., for appellants in No. 84-1043.
 Stephen M. Latimer (Argued), Legal Services of New Jersey, New Brunswick, N.J., Aldred Donnarumma, Union County Legal Services, Elizabeth, N.J., Richard Semel, Bergen County Legal Services, Hackensack, N.J., for appellees in Nos. 84-5063 and 84-5064.
 Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Edward Dennis, Jr., U.S. Atty. for the Eastern Dist. of Pa., Philadelphia, Pa., W. Hunt Dumont, U.S. Atty. for the Dist. of N.J., Newark, N.J., Robert S. Greenspan, Atty., Marleigh D. Dover, Atty., Deborah Kant, Atty. (Argued), Dept. of Justice, Civil Div., Washington, D.C., for Margaret Heckler.
 Leroy S. Zimmerman, Atty. Gen., John O.J. Shellenberger (Argued), Allen C. Warshaw, Deputy Atty. Gen., Philadelphia, Pa., for appellees in No. 84-1043.
 Irwin I. Kimmelman, Atty. Gen. of N.J., Trenton, N.J., for appellants in Nos. 84-5063 and 84-5064.
 James J. Ciancia, Asst. Atty. Gen., Trenton, N.J., of counsel.
 Dorothy A. Donnelly, Deputy Atty. Gen., Trenton, N.J., on brief.
 Before SEITZ, BECKER, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 In 1981, Congress, as part of the Omnibus Budget Reconciliation Act (OBRA), Pub.L. No. 97-35, 95 Stat. 357 (1981), revised the Aid to Families with Dependent Children (AFDC) program by providing that "specified" AFDC beneficiaries who receive lump-sum income in excess of their monthly standard of need are ineligible for program assistance for a specific period of time regardless of whether the lump sum is still actually available. The issue common to the two cases consolidated for the appeal now before us is whether the "lump-sum" provision applicable to the AFDC program, 42 U.S.C. Sec. 602(a)(17), applies to all of its beneficiaries or only those with earned income.
 
 
 2
 The United States district courts in the two cases at bar came to conflicting conclusions. In Betson v. Cohen, 578 F.Supp. 154 (E.D.Pa.1983), the United States District Court for the Eastern District of Pennsylvania denied injunctive relief after holding that the provision applied to all AFDC families. On the other hand, the United States District Court for the District of New Jersey in Harris v. Heckler, 576 F.Supp. 915 (D.N.J.1983), granted summary judgment for the plaintiffs upon holding that the provision applied only to beneficiaries with earned income. The Pennsylvania case presented the additional question of whether personal injury damage awards or settlements are included in the definition of "lump-sum income" under the applicable state and federal law. The district court answered this question in the affirmative.
 
 
 3
 The Pennsylvania plaintiffs and the New Jersey defendants have appealed. We reverse in the New Jersey case. In the Pennsylvania case, we affirm on the application of the lump-sum provision, but reverse on the question of whether personal injury awards constitute income.
 
 I. Background
 
 4
 The AFDC program, established by Congress under Title IV-A of the Social Security Act, is a federal-state matching-fund activity that provides financial assistance to needy dependent children and their parents who live with and care for them. The program is operated at the federal level by the Department of Health and Human Services (HHS). In Pennsylvania, it is administered by the Pennsylvania Department of Public Welfare (PDPW) and in New Jersey through the Division of Public Welfare (NJDPW) of the Department of Human Services (DHS). Defendant Walter Cohen is Secretary of the PDPW; defendant Audrey Harris is Director of the NJDPW. Federal defendant Margaret Heckler is Secretary of HHS.
 
 
 5
 Eligibility for AFDC benefits depends on the financial circumstances of the applicant or recipient. That is, they must have income and resources below applicable limits in order to be eligible for AFDC benefits. In making this determination, the focus is on income and resources that are actually available. See, e.g., Shea v. Vialpando, 416 U.S. 251, 261-62, 94 S.Ct. 1746, 1754, 40 L.Ed.2d 120 (1974); 45 C.F.R. Sec. 233.20(a)(3)(ii)(D). When Congress changed the law in 1981, it altered this scheme somewhat by providing that "specified" AFDC beneficiaries who receive lump-sum income in excess of their monthly standard of need are ineligible for a specific period of time regardless of whether the lump sum is still actually available. The period of disqualification is determined by dividing the state standard of need for assistance to such a family into the amount of the lump sum; the quotient is the number of months of disqualification. See 42 U.S.C. Sec. 602(a)(17).
 
 
 6
 The plaintiffs are contesting the federal and state regulations passed to implement this section. They contend that, under 42 U.S.C. Sec. 602(a)(17), the "specified" AFDC beneficiaries to whom the lump-sum rule applies are those with earned income. HHS, PDPW, and NJDPW, however, insist that the lump-sum rule applies to all beneficiaries regardless of whether they have earned income. See 45 C.F.R. Sec. 233.20(a)(3)(ii)(D); 55 Pa.Code Sec. 183.44(b)(1)(iii), (iv); N.J.A.C. 10:82-4.15(a).
 
 
 7
 The instant cases arose after the plaintiffs, AFDC beneficiaries without earned income, received lump sums of money from various sources. In the New Jersey case, plaintiff Essie Mae Harris received $11,568.36 in life insurance proceeds and plaintiff Theresa Eisen received a bequest of $5,329. As for the Pennsylvania plaintiffs, Nancy Betson and Annabelle Woodard received lump sums in settlement of personal injury claims and Cynthia Williams received retirement benefits.[1] In all five cases, the plaintiffs believed that the lump-sum provision did not apply to them, and the sums were dissipated in a relatively short time.[2] The state agencies, however, applied the lump-sum provision to the plaintiffs and terminated their benefits for periods extending long past the date the funds were exhausted. This therefore left them destitute. The New Jersey district court subsequently granted relief to the plaintiffs there upon finding that the lump-sum disqualification applied only to those with earned income. The Pennsylvania district court denied similar relief.
 
 
 8
 The Pennsylvania plaintiffs, in addition to arguing that 42 U.S.C. Sec. 602(a)(17) should apply only to those families with earned income, also contend that compensation for personal injuries is not "income" as that term is used in the federal statute and state regulations. This conflicts with the PDPW's determination that personal injury awards are properly included as a type of lump-sum "income." The Pennsylvania court held that neither the Social Security Act nor the state's own regulations were violated by the PDPW's application of the rule to personal injury awards. Betson, 578 F.Supp. at 159-60.
 
 
 9
 II. Applicability of Sec. 602(a)(17) to Families Without Earned Income
 
 
 10
 The standard of review of the district courts' decisions is whether they applied the correct legal precepts in reaching their legal conclusions. This court may exercise an independent review of the question of law presented. See Shands v. Tull, 602 F.2d 1156 (3d Cir.1979).
 
 
 11
 In interpreting a statute, the starting point is of course the language of the statute itself. See American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). It is to be presumed that "the legislative purpose is expressed by the ordinary meaning of the words used," Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), and if the statutory language is clear, it is not necessary to examine the legislative history, see TVA v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978).
 
 
 12
 When 42 U.S.C. Sec. 602(a)(17) is read objectively, and with no knowledge of the legislative history, it seems to be unambiguous. By its terms, the lump-sum disqualification applies only to "a person specified in paragraph 8(A)(i) or (ii)." These sections, in turn, specifically refer only to individuals who have earned income. Furthermore, the very use of the term "specified" suggests limitation. See Harris v. Heckler, 576 F.Supp. at 918 ("[i]n common parlance, the word 'specify' contains some connotation of restriction") (quoting Clark v. Harder, 577 F.Supp. 1085, 1087 (D.Kan.1983)). Because the statute, by its very existence, has already restricted the statutory focus to AFDC applicants and recipients, section 602(a)(17)'s reference to persons "specified" in paragraph (8)(A)(i) or (ii) suggests a more restrictive meaning. Id.
 
 
 13
 Further support for this position is supplied by the ability of Congress clearly to provide for "universal" application of numerous other rules when it so intended. For example, section 602(a)(13), requiring determinations of eligibility on a monthly basis, section 602(a)(16), providing for the reporting of child abuse and neglect, and section 602(a)(21), dealing with loss of benefits to strikers, contain no limiting language and therefore apply to all beneficiaries. Congress could have followed this pattern and made the lump-sum rule applicable to all AFDC families simply by omitting the phrase "specified in paragraph 8(A)(i) or (ii)."
 
 
 14
 Even if it is assumed that, for some reason, Congress desired to cite to some provision, "paragraph (8)(A)(i) or (ii)" was inappropriate if universal coverage was desired. As the court in Harris pointed out, "If Congress intended the lump sum rule to apply to all applicants, it is difficult to understand the reference to paragraphs (8)(A)(i) and (ii), the only sections of the statute that discuss earned income." 576 F.Supp. at 918. It would have been much better to cite to the preceding paragraph (7) which provides general guidelines for determining the need of all applicants. Thus, if Congress chose to refer back, it readily could have adopted the same formulation it did in Sec. 602(a)(31), and incorporated paragraph (7) to include all applicants. Id. at 919.
 
 
 15
 Despite the initial appearance of statutory unambiguity, the courts that have construed 42 U.S.C. Sec. 602(a)(17) have come to conflicting conclusions.[3] The courts that have found the statute to be ambiguous have typically relied on the argument that, while it is true that "specified" generally connotes limitation, paragraphs (8)(A)(i) and (ii) do not specify "persons" as much as they specify types and amounts of income. See Faught v. Heckler, 736 F.2d 1235, 1237 (8th Cir.1984); Clark v. Harder, 577 F.Supp. at 1087; cf. Sweeney v. Murray, 732 F.2d at 1022, 1026-27 (1984). The most extensive statement of this proposition is in Clark v. Harder:
 
 
 16
 It appears to this court that the all-important paragraphs (8)(A)(i) and (ii) do not specify 'persons' as much as they specify types and amounts of earned income which are not considered for the purpose of determining need for all persons applying for AFDC. Since all persons applying for assistance have their need determined in accordance with paragraph (8)(A)(i) and (ii), it is possible that all applicants are the persons 'specified' for coverage by the lump sum rule.
 
 
 17
 577 F.Supp. at 1087.
 
 
 18
 This may be a plausible argument and, as the split in authority suggests, reasonable persons can disagree as to the proper interpretation of section 602(a)(17). Consequently, we find ourselves in the same position as the district court in Faught v. Heckler which stated, "Having read [the various opinions on the matter], the Court cannot say that the statute is as unambiguous as it appeared to the Court initially." 577 F.Supp. at 1185. Thus, given the now apparent ambiguity, we turn to the legislative history of the statute.
 
 
 19
 The legislative history of 42 U.S.C. Sec. 602(a)(17) is itself not free from ambiguity, but an objective reading of the available history would appear to support the defendants' position--i.e., that the lump-sum rule was meant to apply to all beneficiaries. It is not really disputed that Congress had two major purposes in amending subsection (a)(17): to promote responsible budgeting of lump-sum income by AFDC families, and to reduce the governmental cost of the AFDC program. See Sweeney v. Murray, 732 F.2d at 1027. With respect to the "responsible budgeting" argument, Congress noted that the old system had "the perverse effect of encouraging the family to spend [lump-sum] income as quickly as possible in order to retain AFDC eligibility." S.Rep. No. 139, 97th Cong., 1st Sess. 505, reprinted in 1981 U.S.Code Cong. & Ad.News 396, 771 (Report of the Committee on the Budget). According to an affidavit filed by JoAnne Ross, the federal Associate Commissioner for Family Assistance, only seven percent of the AFDC caseload had earned income. See Sweeney, 732 F.2d at 1027. Thus, if (as the plaintiffs argue) the statute applies only to those with earned income, the "perverse effect" noted by the Senate would continue for 93 percent of AFDC families. If such an anomalous result were intended, one would expect that it would be supported by explicit language in the statute or its legislative history. No such support is to be found.
 
 
 20
 The "budget cutting" argument also supports the defendants' position. The Senate Report estimated that the new lump-sum rule would save $5 million per year. See S.Rep. No. 139, 97th Cong., 1st Sess. 505, reprinted in 1981 U.S.Code Cong. & Ad.News 396, 771. This estimate was based on AFDC caseload figures provided to Congress by HHS, which had assumed that the amended lump-sum rule would apply to the entire AFDC caseload, and not merely the estimated seven percent of families with earned income. Application of the lump-sum rule to only these families would have reduced the estimated savings to about $350,000--a small fraction of the $5 million estimate found in the Senate Report. Thus, assuming that the Senate Report is to be given some weight, cf. Dickenson v. Petit, 692 F.2d 177, 181 (1st Cir.1982) (determining legislative intent by examining HHS cost-saving estimates), the minimal reduction in AFDC costs that would result if only "earned income" families were included supports the defendants' position.
 
 
 21
 Perhaps the most persuasive argument to the contrary is that Congress apparently desired to reduce the number of recipients with earned income, and to confine AFDC to those without other sources of income. See Harris, 576 F.Supp. at 920. Congressman Latta, who sponsored the amendment containing the lump-sum provision, stated that "[w]e can restore welfare under an income-support program for those with no other means of support rather than the massive income supplementation program it has become." 127 Cong.Rec. H3809 (daily ed. June 26, 1981) (emphasis added). Thus, it would be possible to argue that Congress consciously restricted certain benefits to those with no other "resources" (such as earned income) to fall back on. This, however, would create incentives for AFDC beneficiaries not to work. If Congress truly intended this result, one would expect an explicit statement to that effect. But cf. Sweeney, 732 F.2d at 1029 n. 11; Harris, 576 F.Supp. at 921-22.
 
 
 22
 A recent amendment to 42 U.S.C. Sec. 602(a)(17) provides further support for the defendants' position. On July 23, 1984, Congress enacted an amendment to the lump-sum provision as part of the Deficit Reduction Act of 1984. H.R. 4170, 98th Cong., 2d Sess., 130 Cong.Rec. H6554 (1984). This amendment omits the reference to "a person specified in paragraph (8)(A)(i) or (ii)" and substitutes a full description of all AFDC beneficiaries and "essential persons": "a child or relative applying for or receiving aid to families with dependent children, or any other person whose needs the State considers when determining the income of a family."
 
 
 23
 Although it is well established that subsequent legislation reflecting Congress' "interpretation" of an earlier act is entitled to substantial weight in determining the meaning of an earlier statute, see Bell v. New Jersey, 461 U.S. 773, 784, 103 S.Ct. 2187, 2193, 76 L.Ed.2d 312 (1983); Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969), the question here is whether the amendment in question is to be considered a "clarification" or a "change." Both the case law (though this is of limited help) and postenactment statements made by two congressmen, including the chairman of the Conference Committee that considered the amendment, support the former construction. Numerous cases suggest that where, as here, there is an ambiguous statute or a "dispute or ambiguity, such as a split in the circuits, [this is] an indication that a subsequent amendment is intended to clarify, rather than change, the existing law." Brown v. Marquette Savings & Loan Association, 686 F.2d 608, 615 (7th Cir.1982) (citing 2A C. Sands, Sutherland Statutory Construction Sec. 49.11, at 265-66 (4th ed. 1973); cf. Anderson Bros. Ford v. Valencia, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). This issue cannot be taken as settled, however, for "[a] number of cases ... have taken the contrary position, and hold that where an act is amended ... so that doubtful meaning is resolved such action constitutes evidence that the previous statute meant the exact contrary." 2A Sutherland Statutory Construction, supra, Sec. 49.11, at 265.
 
 
 24
 Thus, statements made by Senator Dole and by Representative Rostenkowski, chairman of the Conference Committee, shortly after the passage of the Deficit Reduction Act take on added significance. They explicitly stated that the purpose of the amendment to the lump-sum provision was to clarify the original statute in light of conflicting court decisions. See 130 Cong.Rec. S10644 (daily ed. Aug. 10, 1984) (remarks of Sen. Dole); id. at E3590 (remarks of Rep. Rostenkowski). Although statements as to legislative intent made by legislators subsequent to the enactment of a statute are typically not entitled to great weight, see United States v. United Mine Workers, 330 U.S. 258, 281-82, 67 S.Ct. 677, 690, 91 L.Ed. 884 (1947), such statements are nevertheless "entitled to consideration as an expert opinion concerning [the statute's] proper interpretation." 2A Sutherland Statutory Construction, supra, Sec. 49.11, at 266; see also North Haven Board of Education v. Bell, 456 U.S. 512, 535, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982) (postenactment developments constitute "authoritative expressions concerning the scope and purpose of [the original statute]") (quoting Cannon v. University of Chicago, 441 U.S. 677, 687 n. 7, 99 S.Ct. 1946, 1952, n. 7, 60 L.Ed.2d 560 (1979)). Such consideration would appear to tip the scales in favor of finding the amendment to be a "clarification" rather than a "change."
 
 
 25
 Finally, some weight must be given to the administrative interpretation of the statute. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (the interpretation of a statute by the agency charged with its administration is entitled to deference). The HHS regulation applies the lump-sum rule to the "AFDC assistance unit's income, after applying applicable disregards." 45 C.F.R. Sec. 233.20(a)(3)(ii)(D). Thus, the regulation clearly includes all AFDC beneficiaries within its scope. This administrative interpretation is, of course, not conclusive. See Zuber v. Allen, 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969); Cleary v. United States Lines, 728 F.2d 607, 610 n. 6 (3d Cir.1984). Nevertheless, it provides solid additional support for the defendants' position.
 
 
 26
 In sum, we hold that 42 U.S.C. Sec. 602(a)(17) applies to all AFDC families, rather than only to those with earned income. The only other circuits that have addressed this issue have come to the same conclusion. See Walker v. Adams, 741 F.2d 116 (6th Cir.1984); Faught v. Heckler, 736 F.2d 1235 (8th Cir.1984); Sweeney v. Murray, 732 F.2d 1022 (1st Cir.1984).
 
 
 27
 III. Personal Injury Awards as "Lump-sum Income" Under
 
 Applicable State and Federal Law
 
 28
 The Social Security Act specifically applies the lump-sum disqualification rule only to recipients of lump-sum "income." See 42 U.S.C. Sec. 602(a)(17). Similarly, the federal regulations apply the rule only to recipients of "nonrecurring lump-sum income." 45 C.F.R. Sec. 233.20(a)(3)(ii)(D) (emphasis added). Still, neither the statute nor the regulations define the term "income." See Betson v. Cohen, 578 F.Supp. 154, 159 (E.D.Pa.1983). The statute does, however, distinguish between "income" and "resources." See 42 U.S.C. Sec. 602(a)(7)(A) (providing that the state agency "shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid") (emphasis added). For example, while all "income" must be counted against the monthly AFDC grant unless it is specifically excluded, see id., unexcluded "resources" render an AFDC family ineligible only if the equity value of the resources exceeds $1,000, see 42 U.S.C. Sec. 602(a)(17)(B).
 
 
 29
 Two of the plaintiffs in Betson v. Cohen received lump sums in settlement of personal injury claims. Their contention here is that, while the lump sums are arguably "resources," they are not "income" and therefore do not trigger the "lump-sum income " rule. Regrettably, the federal law on the subject lends very little help. As we have just noted, neither the statute nor the regulations define "income" and, thus, there is no indication of whether personal injury awards are included within the meaning of that term. Furthermore, only three reported cases present any relevant discussion of the issue,[4] and even among these cases there is no consensus of opinion. Compare Jackson v. Guissinger, 589 F.Supp. 1288 (W.D.La.1984) (finding that personal injury awards are properly included within the definition of "income"), and Betson v. Cohen, 578 F.Supp. 154, 159 (E.D.Pa.1983) (same), with Reed v. Lukhard, 591 F.Supp. 1247 (W.D.Va.1984) (personal injury awards found not to be "income"). Unlike the federal law, the Pennsylvania state regulations do define "income." See 55 Pa.Code Secs. 183.22, 183.44(b)(1)(i). Because we find the state law to be dispositive, it is not necessary for us to reach the issue of the proper interpretation of the federal statute.
 
 
 30
 With respect to state law, we begin by noting that if there were an applicable federal regulation or statutory provision, the states would of course be bound to follow it. See Nolan v. deBaca, 603 F.2d 810 (10th Cir.1979), cert. denied, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980); Holley v. Lavine, 553 F.2d 845 (2d Cir.1977), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). As already noted, however, neither Congress, in the statute, nor HHS, in its regulations, has provided any definition of the word "income." Thus, consistent with the great deal of discretion given to states participating in the AFDC program, see Dandridge v. Williams, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970); King v. Smith, 392 U.S. 309, 318, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968), the states have been allowed to develop their own definitions of income. Cf. 46 Fed.Reg. 46,755 (1981) (HHS interim rules implementing lump-sum provision suggesting that definition of income was a matter of state discretion which was unchanged by OBRA: "For purposes of this provision, the new regulations do not alter the definition of income now employed by States."). In Pennsylvania, the applicable regulations include within the definition of "income":
 
 
 31
 (iv) Lump sum payments as provided in Sec. 183.44(b) (relating to procedures).
 
 
 32
 55 Pa.Code Sec. 183.22. At Sec. 183.44(b)(1)(i), there is the following description of lump-sum income:
 
 
 33
 The types of lump sum income are as follows:
 
 
 34
 (A) Windfalls. Windfalls may include, but are not limited to prizes, insurance benefits, gifts, inheritances and the like.
 
 
 35
 (B) Accumulated or retroactive benefits. These benefits include, but are not limited to, retroactive RSDI, Worker's Compensation, or Unemployment Compensation, and the like. Such benefits are usually subject to reimbursement requirements in accordance with Chapter 257 (relating to reimbursement).
 
 
 36
 The use of the phrase "The types of lump sum income," 55 Pa.Code Sec. 183.44(b)(1)(i) (emphasis added), indicates that "windfalls" and "accumulated or retroactive benefits" are not merely examples, but instead are the only types of payments subject to the lump-sum rule. With respect to windfalls, it is clear that under Pennsylvania law a personal injury award does not constitute a windfall. "Clearly, damages are to be compensatory to the full extent of the injury sustained, but the award should be limited to compensation and compensation alone." Incollingo v. Ewing, 444 Pa. 263, 299, 282 A.2d 206, 228 (1971); accord Hahn v. Atlantic Richfield Co., 625 F.2d 1095, 1104 (3d Cir.1980) ("If injury occurs, tort law attempts to place the injured party in the same position he occupied before the injury.") (emphasis added), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). In fact, the district court essentially acknowledged that personal injury awards are not typically considered windfalls. Betson, 578 F.Supp. at 160. Thus, any reliance on a windfall classification is unjustified.[5]
 
 
 37
 To classify personal injury awards as accumulated or retroactive benefits would also seem to be improper. Both the accepted meaning of the word "benefit" and the examples presented in the statute suggest that Sec. 183.44(b)(1)(i)(B) is referring to assistance accruing as the result of employment, or a government entitlement program. In essence, the benefits in question can be viewed as accumulated, unpaid wages that have, on the occurrence of some event (e.g., retirement, sickness, unemployment), become payable. There is no attempt to make the individual whole. Instead, there is merely the payment of some set amount that the individual expected to have paid to him, as the result of his employment status, upon the occurrence of some specified event. A personal injury damage award, on the other hand, is of course in no way a "fringe benefit" flowing from an employment or governmental relationship. The award is instead intended only to restore the plaintiff to the position he was in before the injury.
 
 
 38
 The district court in Betson v. Cohen, apparently realizing that damage awards are not ordinarily considered "accumulated or retroactive benefits" or "windfalls", relied primarily on the last sentence of Sec. 183.44(b)(1)(i)(B) which states: "Such benefits are usually subject to reimbursement requirements in accordance with Chapter 257...." That is, the district court concluded that personal injury awards were subject to the lump-sum rule under the state's regulations, "in light of the cross-reference to section 257 which includes 'personal damage claims and awards' in its list for reimbursement to the agency." Betson, 578 F.Supp. at 160. This approach of viewing the reimbursement requirements and the definition of lump-sum income as essentially coextensive was improper. First, the regulation itself merely states that the benefits in question "are usually subject to reimbursement requirements." 55 Pa.Code Sec. 183.44(b)(1)(i)(B) (emphasis added). Thus, perfect congruity is not even implied. Second, the lack of identity is supported by several examples. For instance, some payments subject to the lump-sum rule, such as retroactive Social Security benefits, are not subject to reimbursement. See Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (Social Security Act prohibits state enforcement of reimbursement from retroactive Social Security disability benefits). Conversely, other payments, such as receipts from the sale of an exempt resource, may be regarded as subject to reimbursement, but are not windfalls or income. See PDPW Opinion and Order, Feb. 21, 1984.
 
 
 39
 The PDPW interpretation of its own regulations is, of course, entitled to considerable deference. As Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945), suggests, however, we need not accept the agency interpretation if it is "plainly erroneous or inconsistent with the regulation." Id. at 414, 65 S.Ct. at 1217. The PDPW has interpreted the regulation as including personal injury awards within the definition of lump-sum income. Based on the analysis presented above, we conclude that the PDPW interpretation is actually "inconsistent with the regulation." Thus, we do not accept that interpretation, and instead hold that the lump-sum income rule does not apply to personal injury awards under the Pennsylvania regulations.
 
 
 40
 The defendants argue that such a holding violates the eleventh amendment inasmuch as a federal court is instructing state officials on how to conform their conduct to state law. See Pennhurst State School & Hospital v. Halderman, --- U.S. ----, ----, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984). Because, as we shall point out infra, the state officials' conduct violated federal law, as well as state law, we find this contention to be without merit.
 
 
 41
 In Pennhurst, the Supreme Court held that the eleventh amendment bars federal injunctive relief against a state official if (1) " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be to 'restrain the Government from acting, or to compel it to act,' " --- U.S. at ---- n. 11, 104 S.Ct. at 908 n. 11 (quoting Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)), and if (2) the conduct to be restrained is within the scope of authority delegated to the official by state law, see id. --- U.S. at ----, 104 S.Ct. at 909. A state official, however, will be stripped of his authority if he acts in violation of the United States Constitution or federal statutory law. See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); see also Pennhurst, --- U.S. at ----, 104 S.Ct. at 908 ("Thus, in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law.") (emphasis added); Halderman v. Pennhurst State School & Hospital, 673 F.2d 647, 656 (3d Cir.1982) ("Thus it is quite plain that the Eleventh Amendment is no bar to the prospective injunctive relief which was ordered by the district court insofar as that relief is predicated on constitutional or federal statutory claims."), rev'd on other grounds, --- U.S. ----, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Thus, as the defendants acknowledge, the Pennhurst decision does not preclude claims for injunctive relief against state officials based on violations of federal law.
 
 
 42
 The AFDC statute explicitly requires state AFDC plans to "be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. Sec. 602(a)(1). We read this federal law as requiring the state to adhere to its own regulations, at least so long as the regulations are still in effect. In the instant case, PDPW officials were treating personal injury awards as income subject to the lump-sum rule. As noted earlier, such action is inconsistent with the state regulation. The Pennsylvania officials, then, were not adhering to their own regulations and, consequently, violated the state AFDC plan, thereby transgressing federal law.[6] Thus, the Pennhurst case is inapplicable[7] and injunctive relief against the state officials is not precluded.[8] It must be noted, however, that only prospective injunctive relief is possible. Anything more, such as a retroactive monetary award, would run afoul of the eleventh amendment. See Edelman v. Jordan, 415 U.S. 651, 665-69, 94 S.Ct. 1347, 1356-58, 39 L.Ed.2d 662 (1974) (holding that when a plaintiff sues a state official alleging a violation of federal law, a federal court may award an injunction that governs the official's future conduct, but it may not award retroactive monetary relief); see also Pennhurst, --- U.S. at ----, 104 S.Ct. at 908.
 
 IV. Conclusion
 
 43
 In summary, the judgment of the New Jersey District Court in Harris v. Heckler, applying the lump-sum rule only to those families with earned income, will be reversed. The judgment of the Pennsylvania District Court in Betson v. Cohen will be affirmed to the extent that it applies the rule to all AFDC families. That portion of Betson holding that the state definition of "lump-sum income" includes personal injury awards, however, will be reversed. Pursuant to eleventh amendment strictures, only prospective injunctive relief will be mandated.
 
 
 44
 Each side to bear its own costs.
 
 
 
 [1]
 Roseann Barnes is no longer a party to this case. For a discussion of the disposition of her complaint, see Betson v. Cohen, 578 F.Supp. 154, 155 (E.D.Pa.1983)
 
 
 [2]
 In thinking that the provision did not apply to them, the plaintiffs apparently thought that they would be ineligible for assistance only during the time that the lump sum lasted. That is, they believed that they would be eligible again once the funds were exhausted
 
 
 [3]
 Compare Faught v. Heckler, 736 F.2d 1235 (8th Cir.1984) (finding ambiguity); Sweeney v. Murray, 732 F.2d 1022 (1st Cir.1984) (same); Reed v. Lukhard, 591 F.Supp. 1247 (W.D.Va.1984) (same); Betson v. Cohen, 578 F.Supp. 154 (E.D.Pa.1983) (same); Clark v. Harder, 577 F.Supp. 1085, 1087 (D.Kan.1983) (same); and Douthit v. Heckler, 577 F.Supp. 88 (D.Neb.1983) (same), with Harris v. Heckler, 576 F.Supp. 915, 919 (D.N.J.1983) (finding that statute unambiguously applies to only those recipients with earned income); Sweeney v. Affleck, 560 F.Supp. 1118, (same), rev'd sub nom. Sweeney v. Murray, 732 F.2d 1022 (1st Cir.1984); and Vermeulen v. Kheder, No. 82-135, slip op. at 24 (W.D.Mich. June 3, 1982) (same). The Sixth Circuit, meanwhile, found that the statute clearly applies to all beneficiaries. See Walker v. Adams, 741 F.2d 116 (6th Cir.1984)
 
 
 [4]
 Several cases, however, assume without discussion that personal injury awards are to be included within the notion of "income." See Sweeney v. Murray, 732 F.2d at 1024 (referring to "lump-sum income ... such as ... a personal injury judgment or settlement"); see also Walker v. Adams, 741 F.2d 116, 119 (6th Cir.1984)
 
 
 [5]
 Whether the damages are paid by the tort-feasor or her insurer should, of course, not be relevant. Therefore, the inclusion of "insurance benefits" in the statute as an example of a windfall should not be seen as referring to insurance payments in settlement of personal injury damage claims, but rather to insurance benefits, such as life insurance proceeds, which are properly considered windfalls. This is supported by PDPW's policy not to treat insurance payments compensating for the loss of, or damage to, exempt resources as windfalls. Cf. PDPW Opinion and Order, Feb. 21, 1984 (187a)
 
 
 [6]
 The state officials' violation of the state regulation actually violated federal law in a number of respects. First, as noted in the text, there is a violation of section 602(a)(1). Although this violation in all probability also amounts to a breach of the contract with the federal government (thus entitling the Secretary to proceed under 42 U.S.C. Sec. 604), it nevertheless remains a violation of federal law by virtue of the state's deviation from the mandatory provisions of section 602(a). That is, we read 42 U.S.C. Sec. 602(a)(1) as not only requiring that a provision be inserted within the state plan to the effect that it must be adhered to in all political subdivisions, but also that if the plan is administered by the state, the state must in fact adhere to it
 The violation of the state regulation amounts to a federal violation in another respect--i.e., there is a failure to comply with 45 C.F.R. Sec. 206.10(a)(12). This provision requires that the state agency ensure adherence to the state plan. Corrective action is to be taken by the agency when necessary. In the instant case, the state plan has not been adhered to and no corrective measures were taken. Thus, once again, there is a violation of federal law--i.e., a failure to comply with this regulation.
 Finally, 42 U.S.C. Sec. 602(a)(10) requires that aid be furnished with reasonable promptness to all eligible individuals. Just as states may not deny benefits to individuals who meet federal requirements, so too the Social Security Act prohibits a state from refusing assistance to individuals who are eligible under state law. See 45 C.F.R. Sec. 206.10(a)(12); 45 C.F.R. Sec. 205.120(a)(1); Coleman v. O'Bannon, 550 F.Supp. 195 (E.D.Pa.), aff'd, 692 F.2d 748 (3d Cir.1982), cert. denied, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983). As discussed above, Pennsylvania law does not apply the lump-sum rule to personal injury damage awards. The state officials, however, applied the rule in an erroneous manner and thereby deprived individuals who were eligible for assistance (under a correct interpretation of the regulation) of their benefits. Thus, the PDPW's application of the lump-sum rule to plaintiffs Betson and Woodard violated the Social Security Act requirement that aid be furnished to all eligible individuals.
 
 
 [7]
 It is true that, under Pennhurst, a mere mistake in the application of state law, where that misapplication is a violation of only state law, does not strip a state official of his authority and make him individually liable in federal court. --- U.S. at ---- n. 11, 104 S.Ct. at 908 n. 11, 914, 916. In the case at bar, however, the "mere misapplication" violates not only state law but also federal law (i.e., 42 U.S.C. Sec. 602(a)(1))
 
 
 [8]
 The propriety of federal court involvement in cases such as this is further supported by the intensely federal nature of the AFDC program. See, e.g., King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1978) (AFDC program "financed largely by the Federal Government"); cf. Federal Land Bank v. Board of County Comm'rs, 582 F.Supp. 1507, 1512 (D.Colo.1984) (court held, in non-AFDC case, that Pennhurst was inapplicable since "questions presented [were] more federal in nature than those raised in Pennhurst ")