Claudie **COOK**, et al., Plaintiffs,

v.

Roland **HAIRSTON**, et al., Defendants.

No. C–1–89–0066.

United States District Court,
S.D. Ohio, W.D.

April 4, 1990.

Janet Pecquet, Findlay, Ohio, and Bill Hambley, Cincinnati, Ohio, for plaintiffs.

Karen Lazorishak, Columbus, Ohio, and Thomas Deye and Michael Maundrell, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on cross-motions for summary judgment filed by all parties. Pursuant to Fed.R.Civ.P. 52, the Court does hereby set forth its Findings of Fact, Opinion, and Conclusions of Law.

## FINDINGS OF FACT

1) Plaintiffs Claudie Cook and Erma Schaefer are elderly residents of nursing homes in Hamilton County, Ohio. Both are handicapped individuals as that term is defined in 29 U.S.C. Sec. 794.

2) At the time of the filing of this action, plaintiffs Iona and Morrow Snider were elderly residents of nursing homes in Warren County, Ohio. Both were handicapped individuals as defined under 29 U.S.C. Sec. 794. Suggestions of death on the record have been filed for both plaintiffs and Mark R. Bogen has been substituted as

plaintiff to represent their interests (Doc. No. 60).

3) Defendant Roland Hairston is the director of defendant Ohio Department of Human Services (ODHS). These defendants are responsible for administering the Ohio Medicaid program and for establishing rules and regulations to govern the program.

4) Defendant Donald Thomas is the director of defendant Hamilton County Department of Human Services (HCDHS). These defendants are responsible for administering the Medicaid program in Hamilton County, Ohio.

5) Defendants Norman Murdock, Robert A. Taft, II, and Joseph DeCourcy are Hamilton County Commissioners.

6) Defendant Susan Wilson is the director of defendant Warren County Department of Human Services (WCDHS). These defendants are responsible for administering the Medicaid program in Warren County, Ohio.

7) Defendants C. Michael Kilburn, O.H. Egleston, and George Terwilliger are Warren County Commissioners.

8) Defendants ODHS, HCDHS and WCDHS receive federal financial assistance from the United States Department of Health and Human Services.

9) Plaintiff Cook applied for Medicaid with defendant HCDHS on January 6, 1988. She requested Medicaid benefits retroactive to October 1, 1987. Cook's daughter signed the application on Cook's behalf and thereby became Cook's authorized representative. Cook's daughter did not cooperate in establishing Cook's eligibility for Medicaid benefits. As a result of the failure to establish Cook's eligibility, her application for Medicaid benefits was denied.

10) Cook subsequently filed another application for Medicaid benefits which was approved for the period beginning July 1, 1988. Cook owes the nursing home where she resides approximately $9,000 for the period January 1, 1988 to June 30, 1988.

11) Plaintiff Schaefer applied for Medicaid benefits with the HCDHS on May 27, 1988. She requested Medicaid benefits retroactive to May 1, 1988. Schaefer was mentally unable to participate in the Medicaid application process. Schaefer's sister signed the application on Schaefer's behalf and thereby became her authorized representative. Schaefer's sister did not cooperate in establishing Schaefer's eligibility for Medicaid benefits. As a result of the failure to verify Schaefer's eligibility for Medicaid benefits, Schaefer's application for such benefits was denied.

12) Schaefer subsequently filed another application, which was approved for the period beginning June 1, 1988. Schaefer owes the nursing home where she resides approximately $1,000 for care received in May, 1988.

13) Plaintiff Iona Snider submitted an application for Medicaid benefits to the WCDHS on behalf of herself and her husband on September 4, 1987. Iona Snider was physically unable to participate in the application process and Morrow Snider was mentally unable to do so. At WCDHS' request, plaintiffs' nephew appointed himself as their authorized representative. Defendant attempted to contact Sniders' nephew to verify their eligibility for benefits, but could not obtain such verification. Consequently, plaintiffs' application for Medicaid benefits was denied.

14) Plaintiffs Iona and Morrow Snider subsequently obtained approval for Medicaid benefits. At the time this action was filed, they owed the nursing home where they resided approximately $27,000 for care received between September 1, 1987 and May 30, 1988.

## OPINION

The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy and inexpensive determination af any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Rule 56(c) permits the Court to grant summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate the absence of

any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The parties agree that no genuine issues of material fact exist in this case.

### Claims of the Parties

The following claims of plaintiffs remain to be resolved: (1) defendants' policy of holding handicapped nursing home residents who apply for Medicaid benefits responsible for their authorized representatives' omissions, which policy is embodied in Ohio Public Assistance Manual (OPAM) Sec. 1014.1, violates Sec. 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. Sec. 794; (2) OPAM Sec. 1014.1 violates Secs. 1902(a)(8) and (19) of the Social Security Act, 42 U.S.C. Secs. 1396a(a)(8) and (19); (3) defendants' policy under Sec. 1014.1 of failing to provide written notice of Medicaid eligibility determinations to handicapped Medicaid applicants or recipients who reside in nursing homes and who have appointed authorized representatives violates 42 U.S.C. Sec. 1396a(a)(8), 42 C.F.R. Sec. 435.912 and the Due Process Clause of the Fourteenth Amendment; 4) OPAM Sec. 1014.1, on its face and as applied, violates the Equal Protection Clause of the Fourteenth Amendment; and 5) defendants violated the Social Security Act, the Rehabilitation Act, and the Equal Protection Clause by applying OPAM Sec. 1014.1 in a manner that denied plaintiffs assistance with the Medicaid application process solely on the basis of their handicaps, for which violations defendants are liable under 42 U.S.C. Sec. 1983.

Plaintiffs seek to have the Court enjoin defendants from further implementing OPAM Sec. 1014.1; grant a declaratory judgment that OPAM Sec. 1014.1 violates the Social Security Act, the Rehabilitation Act, and the Equal Protection and Due Process Clauses; order defendants to establish an application procedure which assists plaintiffs in the Medicaid application process to assure they receive all Medicaid benefits to which they are entitled; and order defendants to reopen plaintiffs' denied applications and provide plaintiffs assistance in securing benefits.

Defendants move for summary judgment on the grounds that: (1) Secs. 1396a(a)(8) and (19) do not impose on defendants a duty to assist Medicaid applicants with the application process; (2) state policy requires that notices issued in connection with Medicaid eligibility determinations be served on both an applicant and his authorized representative if he has one; (3) the authorized representative provision is rationally related to the purpose of Medicaid; and (4) an order requiring defendants to reopen plaintiffs' Medicaid applications is barred under the Eleventh Amendment.

### Applicable Law

The Court has set forth the law applicable to this case in its order of July 27, 1989, 718 F.Supp. 632. The Court will supplement its statement of the law as necessary in this opinion.

### Procedural Due Process

Plaintiffs allege that they have been deprived of their procedural due process rights as a result of the application of OPAM Sec. 1014.1 to them. Plaintiffs further claim that Sec. 1014.1 violates 42 U.S.C. Sec. 1396a(a)(8) and its implementing regulation, 42 C.F.R. Sec. 435.912.

OPAM Section 1014.1 states that an authorized representative receives notices on an applicant's behalf. That provision does not require service of such notices upon the applicant. It appears from the record that notice of the right to an administrative hearing was given only to plaintiffs' authorized representatives.[1] However, defendants note that state policy now requires that all notices and correspondence issued in connection with a determination of Medicaid eligibility be sent to both the applicant and the authorized representative. This policy change is con-

---

**1.** The Court indicated in its order of July 27, 1989, that whether defendants had given notice to plaintiffs was a disputed matter. It is clear from briefs and documents subsequently submitted by the parties that this issue is not in dispute as to plaintiffs Cook and Iona and Morrow Snider. There is no evidence in the record that plaintiff Schaefer received notice.

tained in Action Change Transmittal No. 34, effective January 1, 1990, issued by ODHS. Plaintiffs claim that the policy change announced in the Action Change Transmittal does not moot their claim for injunctive and declaratory relief since the pertinent provisions of Ohio law have not been altered to reflect the change.

Insofar as OPAM Sec. 1401.1 requires that notice of a decision on an application and of the applicant's right to request a hearing be given only to an authorized representative on the applicant's behalf, the provision is inconsistent with 42 C.F.R. Sec. 453.912, which requires that such notice be given an applicant. However, it is undisputed that Ohio has adopted a policy whereby all notices must be sent to both an applicant and his authorized representative. This policy applies to all situations in which an authorized representative has been named to act on behalf of an individual. Although the pertinent regulations have not been amended to reflect this policy change, an injunction precluding defendants from following a notice policy that is no longer in effect would serve no purpose. Accordingly, plaintiffs' request for injunctive and declaratory relief regarding notice requirements for a Medicaid applicant who has an authorized representative is moot.

 In addition to injunctive and declaratory relief governing notice requirements, plaintiffs seek an order requiring defendants to reopen their Medicaid applications and assist them in establishing their eligibility for benefits. Defendants claim that such relief is precluded by the Eleventh Amendment.

The Eleventh Amendment bars an action for damages that seeks a retroactive award requiring the payment of funds from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Court may not issue an injunction ordering the state to pay retroactive benefits where such an injunction is tantamount to an award of money damages for past violations of federal law. *Id.* at 666–

69, 94 S.Ct. at 1357–59; *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

The Eleventh Amendment does not prohibit the federal court from enjoining state officials to conform their future conduct to requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (*citing Edelman*, 415 U.S. at 667–68, 94 S.Ct. at 1357–58). An injunction of this nature does not implicate the Eleventh Amendment to the extent it seeks payment of state funds as a necessary consequence of future compliance with a substantive federal question determination. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358; *Milliken v. Bradley*, 433 U.S. 267, 289, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977). Nor does the Eleventh Amendment bar an injunction requiring state officials to notify applicants for benefits of the availability of existing state procedures to determine eligibility for past benefits. *Quern*, 440 U.S. at 347–49, 99 S.Ct. at 1148–49; *Green*, 474 U.S. at 70, 106 S.Ct. at 426–27.

Plaintiffs' request for an order requiring defendants to reopen their Medicaid applications and to assist them in the application process would be tantamount to an award of damages for past violations of federal law. Such an order would go beyond a mere explanation of administrative procedures available to plaintiffs and would require affirmative action on defendants' part. Should the reopening lead to a determination that plaintiffs are entitled to benefits for the period in issue, the result would be a payment of retroactive benefits from the state treasury. The Court therefore finds that the relief sought by plaintiffs is barred by the Eleventh Amendment.[2]

*The Rehabilitation Act*

 In order to prevail on a claim under Sec. 504, a claimant must establish that:

---

**2.** In light of this determination, the Court need not address WCDHS' claim that it is entitled to qualified immunity.

(1) he is a handicapped individual as defined in the statute;

(2) he is otherwise qualified to participate in the program or activity at issue;

(3) he has been excluded from the program or activity solely by reason of his handicap; and

(4) the program or activity received federal financial assistance.

*Henning v. Village of Mayfield Village,* 610 F.Supp. 17 (N.D.Ohio 1985).

It is undisputed that plaintiffs meet the definition of handicapped individuals; that they are qualified to participate in the Medicaid program; and that the Ohio Medicaid program receives federal financial assistance. The only issue is whether plaintiffs have been excluded from participation in the Medicaid program solely by reason of their handicaps. The prohibition against excluding an individual from participation in a federally-funded program solely on the basis of his handicap means only that mere possession of a handicap is not a permissible ground for assuming an inability to participate in the program. *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979).

As found by the Court in its prior opinion, OPAM Sec. 1014.1 does not, by its terms, preclude handicapped individuals from obtaining Medicaid benefits or mandate certain treatment for handicapped individuals. The Court further finds that OPAM Sec. 1014.1 as applied to plaintiffs does not violate the Rehabilitation Act. It is true that were plaintiffs not handicapped, they would not have been appointed authorized representatives and may have been able to establish their eligibility for benefits. However, it was not the appointment of authorized representatives or the existence of plaintiffs' handicaps *per se* that led to the denial of Medicaid benefits. Had the authorized representatives cooperated in verifying plaintiffs' eligibility, plaintiffs may have received Medicaid benefits. It was omissions by plaintiffs' authorized representatives that resulted in the denial of benefits. For these reasons, plaintiffs have not established the essential elements of a Sec. 504 claim.

### Equal Protection Claim

■ In order to prevail on their equal protection claim, plaintiffs must establish that they have been discriminated against because of their membership in a certain group. *Joyce v. Mavromatis,* 783 F.2d 56, 57 (6th Cir.1986). Legislation that classifies individuals into various groups withstands scrutiny if (1) the statute has a legitimate purpose, and (2) it is reasonable to believe the classifications drawn under the statute would serve that purpose. *Western & Southern Life Insurance Co. v. Bd. of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

The essence of plaintiffs' equal protection claim is that OPAM Sec. 1014.1 discriminates on the basis of handicaps and mandates different treatment for Medicaid applicants who reside in nursing homes than for the rest of the population. Plaintiffs claim that they do not object to the policy that allows appointment of authorized representatives for handicapped individuals *per se.* Rather, they object to defendants' policy of holding a handicapped applicant vicariously liable for his authorized representative's omissions when for all other individuals, actual written authorization is necessary to impute liability. Plaintiffs allege that there is no rational basis for distinguishing among Medicaid applicants in this manner.

Defendants contend that the purpose of the authorized representative policy is to address the special needs of incapacitated and/or incompetent Medicaid applicants. Defendants claim that O.A.C. 5101:1-2-051, which OPAM Sec. 1014.1 interprets, is rationally related to this purpose. OAC 5101:1-2-051 requires an applicant who chooses to appoint an authorized representative to provide in writing the name of the representative and the duties which the representative may perform on his behalf. For an individual residing in a nursing home, the person supplying information on the applicant's behalf is automatically designated as the authorized representative.

OPAM Sec. 1014.1 does not distinguish between groups of Medicaid applicants with regard to whether vicarious liability will be imputed for omissions of an authorized representative. Vicarious liability is imputed whether an authorized representative is appointed without an applicant's consent or is named by the applicant. OPAM Sec. 1401.1 does distinguish between groups of applicants in that only an incapacitated applicant or an applicant who resides in a nursing home may be appointed an authorized representative without his consent. However, it is reasonable to believe that distinguishing between groups of Medicaid applicants in this manner serves a legitimate purpose. Defendants' policy of allowing for the appointment of authorized representatives without incapacitated applicants' written consent is rationally related to the goal of providing individuals with an opportunity to obtain Medicaid benefits. In the absence of such a policy, many handicapped individuals would be unable to apply for benefits. Indeed, plaintiffs Cook, Schaefer, and Morrow Snider concede that they were mentally incapable of forming the intent to appoint an authorized representative. Without an appointment on their behalf, it is unclear how plaintiffs could have made their initial applications for benefits.

Defendants' policy of appointing authorized representatives for incapacitated Medicaid applicants may work a hardship in cases where the representative does not cooperate in the application process. However, the fact that appointment of an authorized representative may not benefit an applicant in a specific case does not lead to the conclusion that the policy providing for such an appointment lacks a rational basis. Because it is reasonable to believe that defendants' policy would further the purposes of the Medicaid program, defendants are entitled to summary judgment on plaintiffs' equal protection claim.

### Social Security Act Violations

■ Plaintiffs bring a claim under 42 U.S.C. Sec. 1983. They allege that defendants violated 42 U.S.C. Secs. 1396a(a)(8) and (19) because they denied plaintiffs a meaningful opportunity to apply for Medicaid benefits by failing to assist plaintiffs in the application process, and by holding plaintiffs vicariously responsible for their authorized representatives' omissions. Plaintiffs claim that these provisions impose on defendants an affirmative duty to offer assistance to Medicaid applicants in applying for benefits. Plaintiffs request a declaratory judgment that OPAM Sec. 1401.1 violates the Social Security Act. They also seek an order requiring defendants to establish a procedure which assists handicapped individuals in the Medicaid application process to assure that they receive all benefits to which they are entitled.

In order to prevail on a claim under Sec. 1983, plaintiffs must establish a violation of a federal right. *Golden State Transit Corp. v. LA*, —— U.S. ——, ——, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (U.S.1989). The Court must consider whether the federal provision in question creates obligations binding on defendants or simply expresses a congressional preference for certain kinds of treatment. *Id.* The interest plaintiff asserts must not be "too vague and amorphous" to be "beyond the competence of the judiciary to enforce". *Id.*

Section 1396a(a)(8) requires a state participating in the Medicaid program to provide all individuals who wish to apply for Medicaid benefits an opportunity to do so. See also 42 C.F.R. Sec. 435.906. Section 1396a(a)(19) further requires a state to provide such safeguards as are necessary to assure that eligibility for care and services under Medicaid will be determined in a manner consistent with simplicity of administration and the best interests of recipients.

O.A.C. 5101:1–2–053 establishes a procedure for assisting Medicaid applicants with the application process. It provides that a County Department of Human Services (CDHS) is responsible for having someone who can explain and complete the application form when assistance is required. Prior to completing an application for the applicant, the CDHS must determine whether someone else with knowledge of the appli-

cant's situation is available to assist in the application process. If so, or if an authorized representative can be designated, the CDHS is to encourage that individual to assist the applicant. If no one else is available, the CDHS must assist in completing the application form.

Plaintiffs claim that in practice, under O.A.C. 5101:1-2-053, caseworkers rely almost exclusively on authorized representatives to provide information. Plaintiffs further claim that under this provision, assistance will be rendered only when there is no authorized representative.

Plaintiffs have not established a violation of 42 U.S.C. Sec. 1983. Sections 1396a(a)(8) and (19) do not impose a duty on defendants to seek out an incapacitated individual who has been appointed an authorized representative and attempt to verify eligibility for benefits when the authorized representative has failed to do so. It may be that were defendants to undertake such an obligation, more individuals who are eligible for Medicaid benefits would be able to obtain same. However, Sections 1396a(a)(8) and (19) are not specific enough to support imposing such a requirement under the authority of those provisions.

Defendants granted plaintiffs an opportunity to apply for Medicaid benefits by designating authorized representatives and by contacting the representatives in an attempt to obtain the information necessary to establish plaintiffs' eligibility for benefits. Although plaintiffs were not capable of requesting help with the application process, their authorized representatives were free to seek such assistance. Had they sought assistance, O.A.C. 5101:1-2-053 would not have precluded defendants from helping the authorized representatives with the application process. For these reasons, defendants are entitled to summary judgment on plaintiffs' Sec. 1983 claims.

### Conclusions of Law

(1) OPAM Sec. 1014.1 does not violate Sec. 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. Sec. 794.

(2) OPAM Sec. 1014.1 does not violate Secs. 1902(a)(8) and (19) of the Social Security Act, 42 U.S.C. Secs. 1396a(a)(8) and (19).

(3) Plaintiffs are not entitled to injunctive and declaratory relief on their claim that OPAM Sec. 1014.1 violates 42 U.S.C. Sec. 1396a(a)(8), 42 C.F.R. Sec. 435.912, and the Due Process Clause of the Fourteenth Amendment because it fails to require that notice of Medicaid eligibility determinations be given to handicapped Medicaid applicants who reside in nursing homes.

(4) OPAM Sec. 1401.1 does not violate the Equal Protection Clause of the Fourteenth Amendment.

(5) Plaintiffs have failed to establish a claim under 42 U.S.C. Sec. 1983.

It is hereby ORDERED that summary judgment be GRANTED in favor of defendants.

IT IS SO ORDERED.