**Janet S. JORDANO, By and Through her Father and Guardian, Bartholomew JORDANO**

v.

**Natalie Haas STEFFEN, in her capacity as Commissioner of the Minnesota Department of Human Services, et al.**

**Civ. No. 4–91–715.**

United States District Court, D. Minnesota, Fourth Division.

March 11, 1992.

Gregory R. Merz, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

David P. Iverson, Minnesota Atty. General's Office, St. Paul, Minn., for defendants.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). Plaintiff, by her guardian (collectively, the plaintiff), seeks an order directing the defendants to fund and develop a community-based residential placement for her, so she may avoid transfer to a state-owned regional treatment center (RTC).

Hearings were held in this matter on October 18 and 31, 1991, November 26, 1991, December 5, 1991, and January 22, 1992.[1] During this time, and under the Court's auspices, the defendants have twice solicited proposals for the development of a residential program which would be acceptable to all parties. The solicitation sought a placement proposal which would fall within the financial constraints of Minnesota's available Medicaid funding programs, a topic which will be discussed at length, herein. One of the final proposals, offered by Boston Health Care Systems, Inc. (Boston Health Care), was satisfactory to the

---

1. The Court has engaged in extensive efforts to resolve this matter. By agreement of the parties, this Court entered orders on October 30, December 5, and December 6, 1991, maintaining the status quo while the parties attempted to negotiate an acceptable placement for plaintiff.

defendants, the court-appointed expert,[2] and to this Court. The proposal complied with existing financial constraints. Plaintiff, however, has rejected this proposal. Plaintiff's rejection compels the Court to rule on plaintiff's motion for a preliminary injunction.

Upon consideration of the files, records, and proceedings herein, plaintiff's claims in Counts I, II, and III must be dismissed for lack of subject matter jurisdiction. Plaintiff's motion for a preliminary injunction, under Counts IV and V, is denied.

## BACKGROUND

Plaintiff Janet Jordano is a 43 year old, mentally retarded, citizen of the State of Minnesota, who suffers from either Alzheimer's disease or a similar, dementia-causing condition. Compl. ¶ 2. She currently resides in a community-based residential program for the developmentally disabled which is operated by REM–Hennepin, Inc. (REM), in Minneapolis, Minnesota. Compl. ¶ 15. Because her condition has deteriorated, her present placement no longer suits her needs. Plaintiff seeks the development of a custom-designed, community-based placement to avoid defendants' proposal that she be placed in an RTC.

On September 16, 1991, plaintiff filed a five count complaint against five employees of the Minnesota State Department of Human Services (DHS). The DHS employees are sued in their official capacities. On October 18, 1991, Hennepin County (the county) was consensually joined as a party defendant, pursuant to Rule 19(a), Fed. R.Civ.P. These individual defendants and Hennepin County will be collectively styled "the defendants" or "the State."

Plaintiff's claims all relate to a complex state administrative scheme arising under the federal Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (the Act). Before addressing the specifics of plaintiff's complaint, a brief overview of this administrative scheme is necessary.

Under the authority of the federal Medicaid program, Minnesota has established a state Medicaid plan. Minn.Stat. § 256B.01. This plan is funded by the State and the federal government. The plan is administered by the DHS in accord with state and federal law and regulations. 42 U.S.C. § 1396a; Minn.Stat. §§ 256B.04; Minn.R. 9525.0015, *et seq.*

The federal Medicaid program allows a state to apply for "waivers" from certain requirements of a state's Medicaid plan. *See* 42 U.S.C. § 1396n; Minn.Stat. § 256B.092, subd. 5 (Supp.1992). These waivers permit use of federal funds for services which are not generally authorized under the state Medicaid plan. Minnesota was granted a waiver in 1984, engendering the "waivered services" program or "the waiver." MacTaggart Aff., ¶ 3. The waiver provides funding for residential or community-based services so that recipients may avoid institutionalization in intermediate care facilities for mentally retarded persons (ICFs/MR) or RTCs. Minn.Stat. § 256B.092, subd. 5; Minn.R. 9525.1810 *et seq.* The waivered services program is governed by the formal waiver agreement executed between the DHS and the United States Department of Health and Human Services. Minn.R. 9525.1810, subp. 2; MacTaggart Aff., Ex. B.

To implement the waivered services program, the State allocates funds to individual counties. These funds are not unlimited. Under the operational regulations, the DHS commissioner and participating counties must assure that waivered services will be supplied to a specified number of individuals, at an average rate, which is at or under the average rate which would have been provided absent the waivered services. Minn.Stat. § 256B.092, subd. 5; Minn.R., pt. 9525.1910, subp. 4(b); MacTaggart Aff. ¶ 10. Plaintiff's living costs are currently funded, in part, through the waivered services program administered by Hennepin County.

---

**2.** In an order, dated October 31, 1991, this Court appointed Deborah J. Anderson, Ph.D., an expert in the field of clinical psychology, to find

and evaluate an acceptable placement for the plaintiff, pursuant to Rule 706(a), Fed.R.Evid.

The DHS has also established an "Enhanced Waiver Services Fund" (the enhanced waiver), pursuant to Minnesota Rules, part 9525.1890, subpart 6. *See* Department of Human Services, Informational Bulletin No. 91–61C (April 26, 1991) (fiscal year 1992 enhanced waiver funds allocation bulletin) [hereinafter *Bulletin No. 91–61C*]; Department of Human Services, Informational Bulletin No. 90–57A (May 22, 1990) (adoption of Enhanced Waiver Services Fund) [hereinafter *Bulletin No. 90–57A*]; Patterson Aff., Exs. A, B.

The enhanced waiver is a distinct part of the waivered services program. MacTaggart Aff. ¶ 8. The enhanced waiver provides a still higher average rate of funding per day, per person, to a limited number of persons who are already qualified participants in the waivered services program. MacTaggart Aff. ¶ 9. The enhanced waiver, however, is available only to recipients currently residing in an RTC. *Bulletin No. 91–61C* at 2; *Bulletin No. 90–57A* at 2.[3]

Plaintiff brings her complaint under 42 U.S.C. § 1983[4] and 28 U.S.C. §§ 2201, 2202. In Count I, plaintiff alleges a violation of 42 U.S.C. § 1396d(a)(13) of the Act. In Count II, plaintiff alleges a violation of 42 U.S.C. § 1396a(a)(19) of the Act. In both Counts I and II, plaintiff contends that defendants have violated these statutes by failing to fund and develop a community-based residential placement for plaintiff, and further contends that she will suffer irreparable harm if she is demitted from her current residence at REM and placed in a state-owned RTC.

In Count III, plaintiff alleges a violation of the State's Medicaid regulatory scheme, specifically, Minnesota Rules, part 9525.-1890, subpart 6. Plaintiff seeks injunctive relief requiring the State to comply with this rule by providing enhanced waiver funds to avoid placing her in an RTC.

In Count IV, plaintiff alleges that defendants have refused to grant the enhanced waiver for the creation of a community-based placement for her. She claims this refusal violates her right to equal protection of the law under the Fourteenth Amendment. Plaintiff claims she is situated similarly to individuals who currently reside in an RTC, and that the State has no rational basis for distinguishing between individuals already residing in an RTC and plaintiff, who is at risk of being placed in an RTC.

In Count V, plaintiff alleges that defendants' failure to provide enhanced waiver funds for the development of a community-based residential facility is arbitrary and capricious, violating her right to due process under the Fourteenth Amendment.

## COUNTS IV AND V: MOTION FOR PRELIMINARY INJUNCTION

■ Due to the emergency nature of the injunctive relief requested, the Court first considers plaintiff's motion for a preliminary injunction. When addressing a motion for a preliminary injunction, this Court must consider:

(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability of success on the merits; and (4) the public interest.

*Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981). "In balancing the equities, no single factor is determinative." *Id.* at 113.

Plaintiff contends that her demission from REM Nicollet, and subsequent com-

---

**3.** In its memorandum in opposition to plaintiff's motion, defendants contend that the enhanced waiver is available only to individuals who have resided in an RTC for an extended length of time. However, the State's own description of the program provides that the enhanced waiver is actually available to any individual committed to an RTC on, or prior to, March 1, 1991. It further provides that funding authorizations

"will be made on an on-going basis." *Bulletin No. 91–61C* at 2, 4.

**4.** In an apparent typographical error, the complaint cites 28 U.S.C. § 1983, a non-existent provision of the United States Code. The Court recognizes and construes the claims as arising under 42 U.S.C. § 1983, pursuant to Rule 1 and 15(a), Fed.R.Civ.P.

mitment to an RTC, will result in irreparable harm.[5] As set forth, above, defendants have twice solicited proposed placement options. These solicitations have resulted in placement proposals being submitted by Boston Health Care[6] and REM.[7] Boston Health Care proposed a custom-designed, community-based residential placement which the Court finds suitable to the plaintiff's needs. This plan was also acceptable to the defendants and the court-appointed expert. The proposal was constructed to comply with the financial constraints of the available state funding mechanisms.

Plaintiff's guardian rejected this plan, asserting that the placement was unacceptable. In her view, only the REM proposal would meet the plaintiff's needs. The Court finds that, under these circumstances, any threat of irreparable harm which might presently exist would not exist but for plaintiff's guardian's rejection of the Boston Health Care plan. The Court, then, weighs this *Dataphase* factor decisively in favor of the defendants.

In considering the second *Dataphase* factor, the Court finds that the injury to defendants, should this Court grant the relief requested, vastly outweighs the potential of irreparable harm to the plaintiff. Requiring the State to develop a program, at more than twice the current funding limit, could result in a loss of federal approval of the waivered services program. The waivered services program is based upon assurances to the federal government that the average daily cost per individual served will be less than the average daily cost of providing such services within the non-waivered services. Minn.Stat. § 256B.092, subd. 5. Currently, this aver-

age daily rate is approximately $83.00. Patterson Aff. ¶ 6. The Court would jeopardize the State's waivered services program if it ordered excess funding on behalf of the plaintiff without simultaneously reducing funding for another recipient by a compensating amount.

The Court next finds that plaintiff has failed to meet her burden of likelihood of success on the merits. Where the injury to other parties outweighs the irreparable injury to the movant, as it does in this case, "the moving party faces a heavy burden of demonstrating that ... [she] is likely to succeed on the merits." *Dataphase*, 640 F.2d at 113. Plaintiff's equal protection and due process challenges, which are considered below, require a determination of whether the challenged classification is rationally related to a legitimate governmental purpose. *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-458, 108 S.Ct. 2481, 2487-2488, 101 L.Ed.2d 399 (1988); *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971). "[T]he Fourteenth Amendment gives the federal courts no power to impose on the States their views of what constitutes wise economic or social policy." *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970).

Plaintiff has not demonstrated the irrationality of the State's funding scheme which adopts residence in an RTC as a criterion for allocation of enhanced waiver funds. The State's decision to reduce the RTC population by moving difficult-to-place individuals into community-based programs strikes a difficult, but not irrational, balance between those at risk of placement in an RTC and those already residing in an

---

**5.** In considering the irreparable harm factor, the Court emphasizes that the risk of irreparable harm is a question which the Court, and not the plaintiff or her guardian, must decide. If the rule were to the contrary, the moving party in any injunction motion would always find for itself. The Court makes this axiomatic observation because of its intimate involvement in the attempted resolution of this difficult and unfortunate case.

**6.** Under the Boston Health Care proposal, placement in a three-person residential facility was available to plaintiff at a cost of $146.00 per

day. Although substantially above the statewide average allocation of $83.00 per day, this placement would not have increased the county's current non-compliance with the statewide average requirement.

**7.** REM is a purveyor of residential health care services. REM's plan would not be in the same program, nor likely in the same facility, as plaintiff's present REM program. Under the REM proposal, placement in a four-person residential facility was available to the plaintiff at a cost of $208.18 per day.

RTC. In a similar case, the Ninth Circuit held that use of hospitalization as a criterion for providing waivered services funding violated neither the equal protection nor the due process clause. *Beckwith v. Kizer*, 912 F.2d 1139, 1143 (9th Cir.1990). This Court cannot find that plaintiff has met the heavy burden of demonstrating a likelihood of success on the merits.

In considering the fourth *Dataphase* factor, the Court finds that granting plaintiff's injunctive remedy would be contrary to the public interest. Unfortunately, the funds available for these programs are finite. Ordering the development of the requested facility, at a cost far above the currently available funding limits, would rob Peter to pay Paul.[8] Society, through its elected representatives and appointed agency administrators, has made the difficult but necessary decisions regarding the amount and allocation of these funds. The public interest must be weighed adversely to the plaintiff.

For the reasons stated above, plaintiff's motion for a preliminary injunction on Counts IV and V is denied.

## COUNTS I, II, AND III: VIOLATIONS OF THE FEDERAL MEDICAID ACT AND STATE MEDICAID REGULATIONS

The Court finds that Counts I, II, and III fail to state legally cognizable claims, leaving the Court without subject matter jurisdiction.[9] Because the Court may not waive the subject matter jurisdiction requirement, *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.1990), Counts I, II, and III must be dismissed, pursuant to Rule 12(h)(3), Fed.R.Civ.P.

Section 1983 provides a federal cause of action only for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A plaintiff has a right to relief under § 1983 based upon the violation of a federal statute. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). This right, however, is subject to two exceptions—if the statutory provision fails to rise to the level of an enforceable right, or if the statutory scheme itself provides a private action, the plaintiff is precluded from suit under § 1983 to enforce the federal statute. *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). At the same time, the Court recognizes that § 1983 is to be "broadly construed" to prevent the violation of federal rights. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989).

Defendants contend that 42 U.S.C. §§ 1396d(a)(13) and 1396a(a)(19) are too ambiguous and amorphous to create an enforceable right under 42 U.S.C. § 1983. Plaintiff responds that the instant case is indistinguishable from *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), where another provision of § 1396 was found to be enforceable by the invocation of § 1983. 110 S.Ct. at 2519. The Court finds that *Wilder* is distinguishable from the instant case, and holds that neither of these statutory provisions creates a right enforceable under § 1983.

The Court turns first to plaintiff's claims under § 1396a(a)(19). This section provides that:

---

**8.** The current plan authorizes 221 "slots" for enhanced waiver funds to persons currently residing in an RTC. *Bulletin No. 91–61C* at 2. Were the Court to order that enhanced waiver funds be provided to the plaintiff, an individual already residing in an RTC would lose the opportunity to move into a community-based residential placement.

**9.** The Court notes that the State's Eleventh Amendment sovereign immunity does not bar

the claims asserted in Counts I, II, and III to the extent they seek prospective, injunctive relief for the State's failure to comply with federal law. *See Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). "Monetary relief that is ancillary to injunctive relief also is not barred by the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985) (citation omitted).

A state plan for medical assistance must ... provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.

42 U.S.C. § 1396a(a)(19) (1992). The Supreme Court has held that statutory language which merely "express[es] a preference for certain kinds of treatment" is "too thin a reed" to create a right enforceable under § 1983. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1540–41, 67 L.Ed.2d 694 (1981) (*Pennhurst I*). "The interest the plaintiff asserts must not be 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.'" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989) (quoting *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 431–432, 107 S.Ct. 766, 774–775, 93 L.Ed.2d 781 (1987)).

*Pennhurst I* considered whether § 6010 of the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010,[10] created a substantive right under which a state could be compelled to provide certain kinds of treatment. The Court found the language too vague to create an enforceable right, holding that the language expressed a congressional intent "to encourage, rather than mandate, the provisions of better services to the developmentally disabled." *Pennhurst I*, 451 U.S. at 20, 101 S.Ct. at 1541.

This Court finds that § 1396d(a)(19) defines a similar statutory goal. Its language, even broadly construed, grants no private right to compel expenditure of state and federal Medicaid funds in the manner which the plaintiff seeks.

Other courts have reached a similar conclusion. In *Bumpus v. Clark*, 681 F.2d 679 (9th Cir.1982), *withdrawn as moot*, 702 F.2d 826 (9th Cir.1983), the Ninth Circuit held that § 1396a(a)(19) did not create substantive rights in Medicaid recipients. The Court stated that "[w]hether a state plan strikes a proper balance between ... [simplicity of administration and the best interests of the recipients] is a decision better left to the Department of Health and Human Services and the state agencies responsible for implementing Title XIX." *Id.* at 683. *See also Stewart v. Bernstein*, 769 F.2d 1088, 1093 n. 7 (5th Cir.1985); *Cook v. Hairston*, 735 F.Supp. 239, 246 (S.D.Ohio 1990), *aff'd in pertinent part*, 948 F.2d 1288 (6th Cir.1991) (TABLE) (text in WESTLAW).

The legislative history of § 1396a(a)(19) echoes the precatory language of the section. In enacting the provision, the Senate Finance Committee report states, "The committee *hopes* that there will be continuing evaluation of all State plan requirements in relation to the basic objective of the legislation." Senate Finance Committee, Social Security Amendments of 1965, S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2016 (emphasis added).

The Court finds that the Supreme Court's decision in *Wilder* is not dispositive. The *Wilder* Court considered § 1396a(a)(13)(A), which provides for payment to health care providers for services "which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." *Id.*, 110 S.Ct. at 2514.

The *Wilder* Court found a substantive right, enforceable under § 1983, because Congress required findings and assurances by the State that reasonable and adequate rates would be provided to health care providers. *Id.* at 2517. The providers were the intended beneficiaries of the provision. *Id.* The statute was in the form of a congressional command, capable of en-

---

**10.** Section 6010 provided, *inter alia,* that:
Persons with developmental disabilities have a right to appropriate treatment, services and habilitation for such disabilities ... [which]

should be designed to maximize the developmental potential of the persons and should be provided in the setting that is least restrictive of the person's personal liberty.

forcement, based upon a specific standard of reasonable and adequate funding. *Id.* at 2519. The *Wilder* Court found that federal funding was, by virtue of § 1396a(a)(13)(A), essentially contingent upon a state plan's assurances of compliance. *Id.* at 2520.

The language of § 1396a(a)(19) differs from the *Wilder* statute. It contains mandatory language which compels the State to balance administrative simplicity and recipient welfare. But this statute does not make allocation of federal Medicaid funding contingent upon the State's balance of these interests. Whether the State strikes the mandated balance in the administration of this complex scheme involves the weighing of public policy considerations beyond the capacity of this Court. Further, § 1396a(a)(19) provides no guidance as to the standard by which this Court could measure the State's balancing of these interests. Accordingly, the Court finds the plaintiff is accorded no private right under § 1396a(a)(19) which is cognizable in an action under 42 U.S.C. § 1983.

■ Similarly, § 1396d(a)(13) fails to provide a substantive right enforceable under § 1983. This provision defines "medical assistance" as including payment for:

[O]ther diagnostic, screening, preventive and rehabilitative services, including any medical or remedial services (provided in a facility, a home or other setting) recommended by a physician ... for the maximum reduction of physical or mental dis-

ability and restoration of an individual to the best possible functional level.

42 U.S.C. § 1396d(a)(13) (1992). This provision, although facially more specific than § 1396a(a)(19), sets no standard by which state and federal funds are to be allocated from either the waiver or enhanced waiver program. If this were interpreted as requiring a dollar-for-dollar allocation, the clause would require astronomical funding. The Court finds that § 1396d(a)(13) simply provides a listing of reimbursable services, and expresses Congress's preference that these services benefit the recipient. It does not fund the services and does not provide a private right enforceable under § 1983.

■ In Count III, plaintiff contends that defendants have violated Minnesota's Medicaid plan by failing to provide enhanced waiver funds to custom-create a community-based residential placement for her. As previously stated, Minn.R., part 9525.1890, subp. 6 (1991), provides the authority under which Minnesota has exercised its discretion to create the enhanced waiver. *See Bulletin No. 91-61C; Bulletin No. 90-57A;* Patterson Aff., Exs. A, B. Defendants argue that this claim is barred by the State's Eleventh Amendment sovereign immunity.[11]

The Eleventh Amendment deprives a federal court of subject matter jurisdiction to consider whether a state or state officials[12] have violated state law.[13] *Pennhurst*

---

**11.** Hennepin County is not normally protected by the Eleventh Amendment. However, in this case, the County is not an independent party. The County acts as an agent of the State, operating as administrator of the State plan. *See* Minn.Stat. § 256B.05, subd. 1 ("county agencies shall administer medical assistance in their respective counties under the supervision of the state agency and the commissioner of human services"). Any injunctive relief or damages awarded to the plaintiff would necessarily be paid by the State Medicaid funds which are simply funnelled through ministerial county operations. Accordingly, the Court finds, for the purposes of this case, that Hennepin County's immunity is co-extensive with that of the five State officials named in the complaint. *See Carr v. City of Florence, Alabama,* 916 F.2d 1521, 1526–1527 (11th Cir.1990) (deputy sheriffs, employed and paid by counties, enjoyed Eleventh

Amendment immunity as state sheriff's alter ego).

**12.** The five named officials of the DHS are clearly state officials acting in their official capacity. "[R]elief sought nominally against an officer [of the state] is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam). That is the case here. In Count III, plaintiff does not contend that these State officials have acted in an unconstitutional manner which would strip them of their official character and deprive them of their Eleventh Amendment immunity. *See Ex parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908).

**13.** The Court notes that "[t]he mere fact that a State participates in a program through which the Federal Government provides assistance for

*State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–102, 104 S.Ct. 900, 908–909, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). "[I]t is difficult to think of a greater intrusion on State sovereignty than when a federal court instructs State officials on how to conform their conduct to state law." *Id.* at 106, 104 S.Ct. at 911.

Plaintiff claims that *Pennhurst II* does not bar her claim because the Minnesota rule at issue was, itself, made a part of the federally-approved waiver plan. Plaintiff contends that the State has assured compliance with Minn.R., pt. 9525.1890, subp. 6, as a condition of receiving federal funds and, therefore, any violation of this rule is, *ipso facto,* a violation of federal law, unprotected by Eleventh Amendment sovereign immunity. This precise argument was addressed and rejected by the Second Circuit in *Oberlander v. Perales,* 740 F.2d 116 (2d Cir.1984). "[T]his tortuous argument ... if valid, would provide a jurisdictional basis for federal judicial review of every disputed state administrative ruling related to Medicaid." *Id.* at 119. The Court finds the reasoning of *Oberlander* persuasive and adopts the same here.

Plaintiff urges the Court to adopt the reasoning of the Third Circuit in *Barnes v. Cohen,* 749 F.2d 1009 (3d Cir.1984), *cert. denied, Cohen v. Betson,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). In *Barnes,* the Court held that a state's violation of its AFDC plan amounted to a violation of provisions of the federal AFDC statute and regulations. The Third Circuit's analysis, however, misses *Pennhurst II*'s critical warning that federal courts must refrain from "[instructing] ... state officials on how to conform their conduct to state law." *Pennhurst II, supra.* This Court declines to adopt the *Barnes* analysis.

Furthermore, unlike *Barnes,* the plaintiff is not claiming that any provision of the enhanced waiver, or the federal Medicaid statute, is being violated. Her problem is that the rules are being followed. The enhanced waiver provision is explicit; it shall be available only to those persons who already reside in an RTC. *Bulletin No. 91–61C* at 2. By following the promulgated bulletins, the defendants are complying with this provision. Plaintiff would prefer that there be different regulations, but *Barnes* does not compel this result. Nor will this Court.

The statutory provision cited by the plaintiff actually supports the action taken by the defendants. Section 1396a(a)(1) provides that a state plan in effect is "mandatory upon" the state. In accordance with this mandate, the State has followed the existing, approved, enhanced waiver plan. Because the cause asserted in Count III is barred by the State's Eleventh Amendment sovereign immunity, this Court lacks subject matter jurisdiction. The claim must be dismissed.

The Court is mindful that a ruling on a preliminary injunction is an appealable order under 28 U.S.C. § 1292(a)(1). *Omaha Indem. Co. v. Wining,* 949 F.2d 235, 238 (8th Cir.1991); *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 341–342 (8th Cir.1990). Further, the Court recognizes that it serves judicial economy to consolidate a preliminary injunction proceeding with a trial on the merits. *See* Rule 65(a)(2), Fed.R.Civ.P.; *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1229 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). The Court is satisfied that the facts set forth in this opinion and the filings before this Court are complete, and fairly establish the evidence in this case. Accordingly, ten days after its issuance, this order will become a final, dispositive ruling on the merits, unless the parties submit a written objection to this procedure.

Based upon the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Plaintiff's claims in Counts I, II, and III are dismissed for lack of subject matter

---

the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal court."

*Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974).

jurisdiction, pursuant to Rule 12(h)(3), Fed. R.Civ.P.

2. Plaintiff's motion for a preliminary injunction on Counts IV and V is denied.